**UNITED STATES of America, Appellee,**

**v.**

**WONG CHING HING, Defendant-Appellant.**

**No. 408, Docket 88-1322.**

United States Court of Appeals, Second Circuit.

Argued Nov. 15, 1988.

Decided Feb. 6, 1989.

Richard Ware Levitt, New York City, for defendant-appellant.

Catherine E. Palmer, Brooklyn, N.Y., Asst. U.S. Atty., for E.D. of N.Y. (Andrew J. Maloney, U.S. Atty., for E.D. of N.Y., John Gleeson, Asst. U.S. Atty., of counsel), for appellee.

Before FEINBERG, MESKILL and KEARSE, Circuit Judges.

FEINBERG, Circuit Judge:

Wong Ching Hing appeals from a judgment of conviction in the United States District Court for the Eastern District of New York, following a conditional plea of guilty to making a false statement in violation of 18 U.S.C. § 1001. Wong reserved his right to appeal the district court's denial of his motion to suppress roadside statements made without *Miranda* warnings and subsequent statements made at a police station, which he alleges were the fruit of an unlawful arrest. For reasons indicated below, we vacate the judgment of conviction and remand.

Background

At approximately 2:00 p.m. on January 22, 1988, in the vicinity of Albany, a state trooper pulled a speeding Honda over to the side of the road. The car, in which Wong was a passenger, had no license plates and an expired registration, and the driver told police that he had borrowed it from a friend whose name he could not recall. The driver gave the trooper his international driver's permit; all the Honda's occupants appeared to be Asian and spoke Chinese. Wong waited in the Honda while the trooper took the driver to his patrol car and issued tickets for the traffic violations. Before returning to the Honda, the driver gave the trooper permission to search the car, and a second trooper arrived. While the first trooper searched the car, the second patted down the passengers for weapons and engaged in general conversation with them, during which Wong said that he was going to Buffalo to meet a friend at a mall and buy some property. The first trooper found two travel bags in the car with money in them, and a locked suitcase for which Wong volunteered the combination. Upon opening the suitcase, the police found more money, the top layer of which was concealed in carbon paper. Wong told the police that the money belonged to him and that there were $60,000 in the travel bags and $360,000 in the suitcase. When asked where he got the money, Wong replied "I'm rich," and said that he had brought the money with him, apparently from abroad, and had declared it at the airport. These statements were made within a half-hour after the car was stopped.

Because of the expired registration, the car was towed and impounded, and the troopers drove the driver and passengers to the nearest police substation. After arrangements were made for the driver's arraignment on the traffic charges, the three individuals from the Honda were driven to the Fonda police station. At the station, Police Lieutenant Kenneth Cook gave Wong his *Miranda* warnings, and Wong agreed to speak with him and State Investigator Owen Hughes. Wong told Lieutenant Cook and Investigator Hughes that the money was his, he had brought it from Hong Kong, and had declared it upon arriving in this country. When asked exactly how much money there was, Wong replied "twenty, twenty-eight." In answer to the lieutenant's question "twenty, twenty-eight what?" Wong said "you can find out." After this discussion, the lieutenant contacted federal agents. Shortly thereafter, Drug Enforcement Administration ("DEA") agent Robert K. Sears arrived at Fonda, and Wong told him the same information that he had given to the state police earlier. After his conversation with Wong, Agent Sears talked with federal agents and requested verification of the customs information to determine if Wong had actually declared the money upon his arrival at the airport. At no time during the entire after-

noon was Wong handcuffed or restrained in any way. At approximately 9:00 p.m. the investigation at the airport revealed that Wong had not declared the money, and he was placed under arrest.

Wong was originally indicted for failing to declare the money upon his arrival in the United States. 31 U.S.C. §§ 5316(a), (b) and 5322(a). We are informed that after investigation established that Wong had not brought the money into the country with him, he was charged by a superseding information with making a false statement in a matter within the jurisdiction of a federal agency. 18 U.S.C. § 1001. Wong moved to suppress the money and other physical evidence seized from him as well as all statements made to law enforcement officials. After his motion to suppress was denied, Wong entered a plea of guilty, reserving his right to appeal the denial. The judge thereafter sentenced Wong to a term of imprisonment of time served and a fine of $2000 plus a $50.00 special assessment.

Discussion

On appeal, Wong challenges only the admissibility of his statements, and therefore we will not reach the issue of the physical evidence. Appellant argues that (1) statements he made to the trooper on the side of the highway should have been suppressed because he was not given *Miranda* warnings before he made them, and (2) his statements at the Fonda station should have been suppressed because they were the fruit of an unlawful arrest.

■ The district judge held that the statements made on the side of the road were admissible without *Miranda* warnings because the defendant was not in "custody" and his statements were free and voluntary. Like the district court, we believe that *Berkemer v. McCarty,* 468 U.S. 420, 437–39, 104 S.Ct. 3138, 3148–50, 82 L.Ed.2d 317 (1984), which held that *Miranda* warnings need not be given for interrogation during ordinary traffic stops, supports this holding. Although we realize that the roadside stop in this case may have been slightly longer than the stop in *Berkemer,* we agree with the district court that the extra time was "due primarily to the fact that the driver of the car had no registration and gave what were, to say the least, suspicious answers as to the ownership of the car." Wong had no reason to believe that he was under arrest or in custody at that time.

Turning to the occurrences at the Fonda station, the first set of statements made to the state police added nothing of substance to the statements appellant had made at roadside, which we have held admissible. The second set of statements made in the Fonda station, at 7:15 p.m., also added nothing of substance. However, they were made to the DEA agent and formed the basis of the information to which Wong pled guilty.[1] Because the later statements were merely repetitious of the earlier statements made on the roadside, we asked the parties to submit post-argument letter briefs on whether we could affirm on that ground, assuming arguendo that the roadside statements were admissible.

Appellant argues that we cannot affirm on this ground because the second set of statements at the Fonda station were not only the product of an unlawful arrest, but also were the only statements made to the DEA agent, thus forming the basis of the information to which Wong pled guilty. The government agrees that in view of the specific charge against Wong, we cannot affirm on the ground that the roadside statements and the later statements were substantially the same. Surprisingly, however, the government also informs us that the roadside statements could independently support a prosecution under the same statute, 18 U.S.C. § 1001, even though they

1. The superseding information to which Wong pled guilty reads:

> On or about January 20, 1988, within the Northern District of New York, the defendant WONG CHING HING did knowingly and wilfully make a false, fictitious and fraudulent statement *to an agent of the Drug Enforcement Administration,* a department and agency of the United States, in a matter within the jurisdiction of the Drug Enforcement Administration. (emphasis added).
>
> (Title 18, United States Code, Sections 1001 and 3551, *et seq.*).

were not made to a DEA agent. The government cites *United States v. Yermian,* 468 U.S. 63, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984), *United States v. Precision Medical Laboratories, Inc.,* 593 F.2d 434, 442 (2d Cir.1978), and *United States v. Candella,* 487 F.2d 1223, 1225–27 (2d Cir.1973), cert. denied 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974) for this proposition.

The chain of events here, of course, is not the usual situation, in which the first statement made by a defendant is inadmissible but later statements are not challengeable on any independent ground. In that situation, this court has held that the later statements were tainted by the first statement, which "let the cat out of the bag," and therefore could not be properly admitted. See *United States v. Shelly,* 430 F.2d 215, 218 (1970). In this case, however, the first statement was admissible, and not affected by a possible taint on the later statements. Therefore, it is at least arguable that any error in refusing to suppress the later statements is harmless since they were, at most, cumulative. However, while the argument might be persuasive in the abstract, we agree with the parties that it cannot carry the day, in view of the precise nature of the information to which appellant pled guilty. See note 1. Therefore, the admissibility of the later statements made at the Fonda station must be considered independently.

Turning to that issue, appellant argues that he was in custody at the Fonda station when he spoke to the DEA agent, that the police lacked probable cause to detain him —a contention that the government also does not dispute—and that the detention could not be validated under the stop-and-frisk doctrine established in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), because defendant was held for over five hours before he made the statements to the DEA agent. Appellant therefore concludes that the detention was an unlawful arrest, and his statements must be suppressed. He relies on *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), arguing that the length of the stop alone made it an unlawful arrest. In *Place,* the Supreme Court said that the police could not detain a person's luggage for 90 minutes while transporting it to a place where drug-sniffing dogs could smell it. The Court wrote: "The length of the detention of respondent's luggage alone precludes the conclusion that the seizure was reasonable in the absence of probable cause." Id. at 709, 103 S.Ct. at 2645.

The government responds that Wong's statements to the DEA agent at the Fonda station were obtained during a valid investigative stop, and were therefore properly admitted into evidence under the Supreme Court's most recent investigative-stop cases. The government relies principally on *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), arguing that length alone does not invalidate a *Terry* stop, and that police diligence is a crucial factor in determining reasonableness of a seizure under the fourth amendment. Id. at 685, 105 S.Ct. at 1575. In *Sharpe,* the Supreme Court held that a 20–minute detention was valid where a DEA agent noticed suspicious circumstances concerning a camper and a car, pulled the vehicles over to the side of the road, and smelled marijuana in the camper. The Court specifically noted that the police did not delay in their investigation, and that the length of the stop was extended because of the evasive actions of the car's driver, thus allowing a longer detention than would otherwise be appropriate. Id. at 687–88, 105 S.Ct. at 1576. The district court relied upon *Sharpe* in refusing to grant Wong's motion to suppress in this case, finding that the police acted diligently in their investigation.

It is true that the Supreme Court has explicitly "decline[d] to adopt any outside time limitation for a permissible *Terry* stop." *Place,* 462 U.S. at 709, 103 S.Ct. at 2646. Nevertheless, the stop in *Sharpe,* which the Supreme Court held constitutional, lasted only about 20 minutes, and the 90–minute stop in *Place* was held unconstitutional for a variety of reasons, including its duration. The facts of this case—the extraordinary length of the detention, the minor nature of the crime charged, the absence of danger to the police, and the

other prosecutorial options referred to in the government's post-argument letter to us—may well warrant the conclusion that the detention was not valid as a *Terry* stop. Nonetheless, a conclusion that the statements to the DEA agent must be suppressed on *Terry* grounds would not, in light of the record in the district court, automatically mean that appellant's guilty plea must be set aside, for, as discussed below, the effect of such a ruling on appellant's legal position would not be clear. Indeed, we are compelled to conclude that the conditional plea of guilty did not comply with the requirements of Fed.R.Crim.P. 11(a)(2) or with standards set by this Court and hence cannot be properly reviewed on this appeal.

There is a strong federal policy against piecemeal appeals, see 28 U.S.C. § 1291, especially in criminal cases, see, e.g., *Flanagan v. United States,* 465 U.S. 259, 264–65, 104 S.Ct. 1051, 1054, 79 L.Ed. 2d 288 (1984); *United States v. MacDonald,* 435 U.S. 850, 853–54, 98 S.Ct. 1547, 1549, 56 L.Ed.2d 18 (1978); *Carroll v. United States,* 354 U.S. 394, 403, 77 S.Ct. 1332, 1338, 1 L.Ed.2d 1442 (1957). In recognition of this policy, we have stated repeatedly that entry of a conditional plea of guilty is inappropriate unless the issue preserved for appeal would be dispositive of the case. See, e.g., *United States v. Guerro,* 694 F.2d 898, 903 (2d Cir.1982), cert. denied, 459 U.S. 1222, 103 S.Ct. 1230, 75 L.Ed.2d 463 (1983); *United States v. Lace,* 669 F.2d 46, 53 n. 5 (2d Cir.1982); id. at 57 n. 7 (Newman, J., concurring); *United States v. Burns,* 684 F.2d 1066, 1071–73 (2d Cir.1982), cert. denied, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983). Rule 11(a)(2) of the Federal Rules of Criminal Procedure reflects this view, since it provides that "[a] defendant who prevails on appeal shall be allowed to withdraw the plea." See also Advisory Committee Note to 1983 Amendment. The Rule further indicates that a conditional plea of guilty should not be accepted without the government's consent, and the Advisory Committee Note points out that this requirement is designed to "ensure that conditional pleas will be allowed only when the decision of the court of appeals will dispose of the case either by allowing the plea to stand or by such action as compelling dismissal of the indictment or suppressing essential evidence."

Rule 11(a)(2) also requires that the conditional plea be *in writing,* a provision designed in part to clarify for the parties and the appellate court precisely what issues are to be preserved. The essential requirements for a proper conditional plea have not been met in the present case.

If a written agreement was made, it was not included in the record on appeal, and we have not seen it. The transcript of the guilty plea, which this Court received only after requesting it, has two references to the reservation, both of them vague. Defense counsel said that one of the plea's provisos was that "Mr. Wong will preserve for appeal purposes your Honor's determination concerning his search and seizure point." The Assistant United States Attorney said, "[t]he defendant preserves his right to appeal the issue raise [sic] in the suppression hearing before your Honor and this will cover his participation both in the distribution of heroin and as well as the money laundering on January 20, 1988." These statements do not reveal whether Wong's guilty plea was conditioned upon the government's being successful in admitting all of the statements or any one of them. Thus, if we were to hold that some of Wong's statements are admissible and some are not, we could not be sure, on the record, whether our holding would allow Wong to withdraw his guilty plea.

Accordingly, we conclude that it was inappropriate for the government to consent to the plea of guilty and for the district court to accept it. We conclude that the judgment must be vacated and the matter remanded to the district court for further proceedings not inconsistent with the above standards. We should note that the government has recently moved to supplement its presentation by urging affirmance on a ground not previously argued. On remand, the parties will not be precluded from asserting new arguments.