**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Joseph YASAK, Defendant–Appellant.**

No. 88–3474.

United States Court of Appeals, Seventh Circuit.

Argued May 26, 1989.

Decided Sept. 6, 1989.

---

**5.** On this score, it is instructive to note that the plaintiffs did not seek any damages in this action.

Thomas M. Durkin and Barbara F. Lazarus, Asst. U.S. Attys., Office of the U.S. Atty., Chris Gair, Chicago, Ill., for the U.S., plaintiff-appellee.

Sam Adam, Chicago, Ill., and Mark Martin, for Joseph Yasak, defendant-appellant.

Before WOOD, Jr., MANION and KANNE, Circuit Judges.

MANION, Circuit Judge.

Joseph A. Yasak was charged in a one-count information with knowingly making a false declaration regarding a material fact while testifying under oath before a grand jury. 18 U.S.C. § 1623.[1] He moved under Fed.R.Crim.P. 12(b) to dismiss the information, claiming that, among other things, his responses to the grand jury's questions were literally true, and thus incapable of constituting perjury; that the grand jury's questions were "fundamentally ambiguous;" and finally, that the wording of the information improperly varied from the relevant grand jury testimony. The district court denied the motion, and Yasak entered a conditional guilty plea under Fed.R.Crim.P. 11(a)(2). We affirm.

I.

Yasak was subpoenaed to appear before the Special October 1983 Grand Jury as a witness in the government's Greylord investigation. Yasak was granted immunity in exchange for his testimony, but was warned that his immunity would not extend to a perjury prosecution. Yasak testified that he had been a Sergeant in the Chicago Police Department assigned, since approximately 1978, as the Supervisor of Traffic

---

1. Section 1623 provides in part:

(a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Tickets and Accountability in the Records section. The government suspected Yasak had been taking money from people with outstanding parking tickets and splitting it with someone in the City's corporation counsel's office. So far as is relevant here, two exchanges occurred in the grand jury session:

Q. Have you ever taken money from anyone, Mr. Yasak, in order to take care of someone's outstanding parking tickets?

A. [Yasak] In which way do you mean, by taking money?

Q. Have you ever received money from anyone in order to take care of their outstanding parking tickets?

A. Can I go outside and talk to Mr. Walsh [Yasak's attorney]?

Q. Of course you can. Get up and do it. (Whereupon Yasak left the Grand Jury room to consult with his attorney, and upon his return resumed the witness stand and testified further as follows.) [Upon Yasak's request, the previous question was read by the court reporter.]

A. Yes, I have taken money, and I have turned it over to pay for their traffic citations, and have given it to the Corporation Counsel's Office, for them to pay for it.

\* \* \* \* \* \*

Q. Do you have any ongoing relationship with anyone, where you accepted tickets from them?

A. What do you mean by ongoing relationship, a continuous thing?

Q. Yes, where it would happen more than once, that you received any benefits from it whatsoever.

A. I would never receive any benefits from any tickets that I would help people take care of.

Q. Not of any sort, not even money, no favors?

A. No, ma'am.

Q. Nothing?

A. No, ma'am.

Over three years later the government charged Yasak with perjury in a one-count information. The information charged that Yasak "knowingly made under oath a false declaration regarding a material fact before the Special October 1983 Grand Jury, in that he testified that he never received any money or benefits from anyone in return for having their parking tickets disposed of, when in fact [Yasak] then and there knew that he had received money and goods from various people and companies in return for disposing of their parking tickets."

Yasak moved to dismiss the information before trial, presenting a host of challenges. Fed.R.Crim.P. 12(b). Only his so-called *"Bronston* issue"[2] challenge is at issue here, though. Yasak argued his answers were literally true, if misleading; that the information did not track the grand jury testimony; and that the government's questions were "fundamentally ambiguous." The government opposed the motion, contending that, among other things, Yasak's literal truth challenge was a jury question, and thus unable to be resolved by a motion to dismiss. In connection with its argument, the government informed the district court that, at trial, it expected to offer evidence showing Yasak was lying to the grand jury. The government stated there was an assistant corporation counsel who would testify that he and Yasak "participated in a scheme to take money from people with multiple parking tickets and to split that money, with none of the money being turned over to the city for purposes of paying the fine."

The district court denied Yasak's motion. The court found no significant difference between the grand jury testimony and the language used in the information. It also rejected Yasak's contention that the government's questions were fundamentally ambiguous, holding that the questions could be reasonably understood, and that it was for a jury to decide whether Yasak's answers were false. Finally, concerning

---

**2.** This refers to *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), and will be more fully discussed below.

Yasak's assertion that his answers were literally true, the court held Yasak did

> "not explain how [his] statement [was] literally true. There [was] no argument that payments were on occasion, legitimately relayed from him to the corporation counsel's office to the appropriate city employee to receive payment. Therefore, he was not telling the truth if whenever he forwarded a payment to a corporation counsel it was for the purpose of being kept by himself and/or the corporation counsel."

## II.

We must first address a procedural problem before reaching the merits of Yasak's appeal. This appeal purports to be based on a conditional guilty plea entered pursuant to Fed.R.Crim.P. 11(a)(2). That rule provides in part that "[w]ith the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty ... *reserving in writing* the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motions" (emphasis added). Here, there was no written reservation of Yasak's right to review the district court's denial of his motion to dismiss; however, all parties and the district court believed this was to be a conditional plea. On appeal, both the government and Yasak agree the plea was conditional, and argue that we may hear this appeal even without a written reservation of Yasak's right to appeal.

The requirement that the conditional plea put in writing a reservation of the right to appeal from a specified adverse pretrial motion is to ensure that careful attention will be paid to any conditional plea. Fed.R. Crim.P. 11, Notes of Advisory Committee on Rules, 1983 Amendment. It also identifies precisely what pretrial issues have been preserved for appellate review. *Id.* And the added step will further prevent entry of a conditional plea "without the considered acquiescence of the government." *Id.* Rule 11(a)(2), then, represents a departure from cases like *United States v. Burke,* 517 F.2d 377, 379 (2d Cir.1975),

which held that the government's mere silence in the face of an expressed desire to conditionally plead guilty was sufficient to constitute its assent; now the rule requires "unequivocal government acquiescence." *United States v. Carrasco,* 786 F.2d 1452, 1454 n. 3 (9th Cir.1986). Finally, the rule ensures that conditional pleas will be allowed only when the appellate court's decision will completely dispose of the case. Notes of Advisory Committee, 1983 Amendment; *see also United States v. Wong Ching Hing,* 867 F.2d 754, 758 (2d Cir.1989).

■ When there is no special written reservation of the right to appeal, the parties' statements regarding the plea are ambiguous, and the government declines to assent to an appeal, there is not a valid conditional plea under Fed.R.Crim.P. 11(a)(2). *Carrasco,* 786 F.2d at 1454. *See also United States v. Rinaldi,* 808 F.2d 1579, 1582–83 n. 3 (D.C.Cir.1987); *United States v. Echegoyen,* 799 F.2d 1271, 1276 (9th Cir.1986). But although the *Carrasco* court characterized Rule 11's writing requirement as "jurisdictional," we think it is more in the nature of a right which can be waived; however, it only can be waived expressly. And it is exclusively within the government's power to waive it. *Cf. United States v. Fisher,* 772 F.2d 371, 374 (7th Cir.1985) (per curiam) (government can refuse to assent to a conditional plea for any reason or no reason; Rule 11(a)(2) creates no enforceable right to enter a conditional plea).

■ Even if the government assents to a conditional plea, however, a court need not accept the plea unless assured that the decision of the court of appeals will dispose of the case. *U.S. v. Wong Ching Hing,* 867 F.2d at 758. There, the defendant entered a conditional plea of guilty, reserving (though not in writing) the right to appeal the denial of his motion to suppress certain statements made to law enforcement officers. Despite the government's assent, the court of appeals held it was inappropriate for the government to have consented to the conditional plea, and for the district court to have accepted it, because it was

unclear whether the court of appeals' holding would completely dispose of the case. *Id.* at 758. If it were to suppress only some of Wong's statements but not others, the court explained, it could not be sure whether its holding would allow Wong to withdraw his guilty plea—something Rule 11(a)(2) expressly provides for in the event a defendant successfully appeals. Fed.R. Crim.P. 11(a)(2) ("[a] defendant who prevails on appeal shall be allowed to withdraw the plea"). A written reservation of Wong's right to appeal could have cleared up the confusion. Thus, in the absence of a writing the court was constrained to vacate the district court's judgment.

■ Fortunately, in this case we face no such obstacles. While there is no special writing reserving Yasak's right to appeal, we nonetheless are persuaded that Rule 11(a)(2)'s intent and purpose have been fulfilled. The transcript of the plea hearing provides a writing of sorts; and although not always able to constitute the writing required by Rule 11, *see U.S. v. Wong Ching Hing,* 867 F.2d at 758; *Carrasco,* 786 F.2d at 1454, it may suffice here. The plea hearing transcript plainly shows that both parties agreed to the conditional plea, that the district court accepted the plea, and that the court understood its ruling on Yasak's motion to dismiss was the specific (and dispositive) issue for appeal. Moreover, the government expressly states on appeal, as it did in the district court, that it assents to Yasak's conditional plea. We thus are assured beyond any doubt that the government unequivocally has acquiesced and assented to this appeal, and that our decision will finally resolve this matter. Under these circumstances, the absence of a special writing does not foreclose a conditional plea under Fed.R.Crim.P. 11(a)(2). We do not believe this result conflicts with either *Carrasco, supra,* or *U.S. v. Wong Ching Hing, supra.* Although a transcript may suffice, the better practice is for such conditional pleas to be put in writing. District courts should follow Rule 11's literal language and insist on written pleas under Rule 11(a)(2). The parties likewise should insist on them. This is especially so for defendants, for they have the most to lose if a plea is held invalid.

## III.

■ We turn now to Yasak's substantive arguments. Yasak first says his responses in the grand jury session were literally true and cannot support a perjury conviction. *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568, holds that literally true but unresponsive answers are to be remedied by questioner acuity, not by a federal perjury prosecution. *Id.* at 362, 93 S.Ct. at 601. In *Bronston,* the perjury conviction (under 18 U.S.C. § 1621) was based upon answers given by Bronston at a bankruptcy hearing to determine the extent and location of Bronston's company's assets. The following colloquy provided the basis for the perjury charge:

Q. Do you have any bank accounts in Swiss banks, Mr. Bronston?

A. No, sir.

Q. Have you ever?

A. The company had an account there for about six months in Zurich.

Q. Have you any nominees who have bank accounts in Swiss banks?

A. No, sir.

Q. Have you ever?

A. No, sir.

It was undisputed, though, that Bronston, personally, had previously had a Swiss bank account for nearly five years. So his answer (regarding the company's account), while literally true, was unresponsive, and even misleading, as it implied there never was a personal bank account. *Id.* at 357, 93 S.Ct. at 599. Even so, the Court overturned his perjury conviction, explaining "[i]t may well be that petitioner's answers were not guileless but were shrewdly calculated to evade. Nevertheless ... any special problems arising from the literally true but unresponsive answer are to be remedied through the 'questioner's acuity' and not by a federal perjury prosecution." *Id.* at 362, 93 S.Ct. at 601.

Yasak claims two responses were literally true; first, that he took money for parking tickets and turned it over to the corporation counsel's office for them to pay for

the tickets, and second, that he never received any benefits from "any tickets." Whether those statements were literally true, though, was a question of fact, and thus a question for the jury. *United States v. Lighte*, 782 F.2d 367, 373 (2d Cir.1986). But Yasak opted to avoid a jury trial, and entered a conditional plea of guilty instead. A motion to dismiss is not intended to be a "summary trial of the evidence." *United States v. Winer*, 323 F.Supp. 604, 605 (E.D.Pa.1971). Such a motion is directed only to the validity of the indictment or the information, and it tests only whether an offense has been sufficiently charged. *Id. See also United States v. Sampson*, 371 U.S. 75, 78–79, 83 S.Ct. 173, 174–175, 9 L.Ed.2d 136 (1962). Thus, the district court could not decide the jury question Yasak raised, and properly denied Yasak's motion on this ground because the information sufficiently charged an offense of perjury under 18 U.S.C. § 1623. The district court was completely correct, however, in observing that *if* the government's version of the payoff scheme, as set forth in its response to Yasak's motion to dismiss, was proved at trial, Yasak's responses to the grand jury were not true, or at least a jury could so find. *See United States v. Buffalano*, 727 F.2d 50, 51 (2d Cir.1984).

Yasak's contention, made for the first time at oral argument, that other grand jury testimony "proved" the literal truth of his statements made to the grand jury, only underscores the point that this was a jury question. At this stage, neither the district court nor this court is required to sift through evidence and make factual determinations.[3] Yasak was perfectly able to present his arguments to a jury; he chose not to, instead opting to plead guilty. We also note that, in any event, Yasak's factual argument lost what little force it may have had in light of his admission, made at his plea hearing, that he indeed participated in the scheme, as described by the government, whereby he took money from people who had outstanding parking tickets and split it with someone in the corporation counsel's office.

Yasak's second "literal truth" argument is meritless. He claims his answer "I would never receive any benefits from any tickets that I would help people take care of" was literally true. Yasak now claims this testimony in substance was that he did not receive any benefits from any *tickets*, as opposed to people. We cannot countenance this kind of argument which obviously was developed by a creative mind in hindsight. We are not required to indulge every imaginable twist or contortion of the words or language used. Under a common sense reading, it is plain that Yasak was referring to benefits received from people, not to benefits received from any inanimate tickets. *Cf. United States v. Martellano*, 675 F.2d 940, 942 (7th Cir.1982). And that testimony is at odds with the evidence the government expected to produce at trial (and to Yasak's own admissions). In any event, this too could have been put to the jury. Thus, it was not error to deny Yasak's motion in this regard.[4]

■ Yasak next contends that the information did not sufficiently track the grand

---

3. It is questionable whether Yasak's motion, at least insofar as his literal truth arguments were concerned, was even a proper matter for pretrial resolution under Fed.R.Crim.P. 12(b), given the fact that it involved a jury question on the ultimate issue of guilt or innocence—whether Yasak lied to the grand jury. Federal Rule of Criminal Procedure 12(b) permits pretrial motions to be raised which are capable of determination without trial of the general issue. Fed.R. Crim.P. 12(b); *see also United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). A defense generally is capable of determination before trial if it involves questions of law rather than fact. *Id.* If the pretrial claim is substantially intertwined with the evidence concerning the alleged offense, the motion to dismiss falls within the province of the ultimate finder of fact. *Id. See also United States v. Covington*, 395 U.S. 57, 60, 89 S.Ct. 1559, 1561, 23 L.Ed.2d 94 (1969). Yasak's motion in this regard was substantially intertwined with the evidence that would have been necessary had there been a trial.

4. The government claims Yasak's perjury conviction can rest alone on his answer in this colloquy (*i.e.*, that he never received any benefits from people for taking care of their parking tickets). If the government's evidence were established, we would agree.

jury testimony. The government asked Yasak, "[h]ave you ever taken money from anyone, Mr. Yasak, in order to *take care of* someone's outstanding parking tickets?" (emphasis added). But the information charged that Yasak had lied about having tickets *"disposed of"* (emphasis added). Yasak now claims that substituting the phrase "disposed of" in the information for the phrase "take care of" which was used in the grand jury, renders the information "deficient on its face." We disagree.[5] The law does not require that a perjury indictment or information reiterate the "exact words of the perjured testimony." *United States v. Ras*, 713 F.2d 311, 318 (7th Cir. 1983). It is sufficient if the indictment or information provides "such testimony in substance." *Id.* That was done here.

The information charged in substance that Yasak illegally received payments from people and companies with outstanding parking tickets and split it with another person in the corporation counsel's office in return for "taking care of" the parking tickets. Whether the words "take care of" or "disposed of" are used, the point is that Yasak, according to the government's investigation, was receiving money or benefits in return for his making sure the traffic tickets were destroyed or not enforced. Both the grand jury questions and the information conveyed this. The change in wording between the grand jury questions and the information was insignificant; thus, the information was sufficient to describe the circumstances of Yasak's perjury, and to fairly inform him of the charges against him. *Id.* at 319.

■ Next, Yasak contends the grand jury questioning was unfair and cannot be used to support a perjury conviction because it contained a double negative which could not be answered "with a simple yes or no response," thus placing him in a "no win situation." The full exchange Yasak refers to was as follows:

Q. Do you have any ongoing relationship with anyone, where you accepted tickets from them?

A. What do you mean by ongoing relationship, a continuous thing?

Q. Yes, where it would happen more than once, that you received any benefits from it whatsoever.

A. I would never receive any benefits from any tickets that I would help any people take care of.

Q. Not of any sort, not even money, no favors?

A. No, ma'am.

Q. Nothing?

A. No, ma'am.

Yasak complains specifically of the exchange beginning with the government's question "[n]ot of any sort...." Although perhaps the government's questions were inartfully phrased, as it acknowledges, we are convinced that when the entire colloquy is examined, the government's questions could be reasonably understood and answered. Yasak testified that he had never received any benefits from people for taking care of their parking tickets. The government probed Yasak's use of the term "benefits," asking "[n]ot of any sort, not even money, no favors?" to which Yasak replied "[n]o...." Again, the government sought to clarify Yasak's answer, asking "[n]othing?", obviously meaning "no type of benefit, no matter what kind?" Again Yasak answered "[n]o...." Put in context, the questions were understandable and plainly clear enough to elicit informed and intelligent responses.

Yasak's final challenge is cumulative. He says, simply, the grand jury questioning "when considered in its totality was fundamentally ambiguous." *Again*, we disagree. If anything, as we just explained, the questioning becomes even clearer when looked at "in its totality." Like the district court, we think the questions could be rea-

**5.** Yasak also points out that the grand jury questioning referred to an "ongoing relationship" while the information did not. But beyond this simple observation, Yasak makes no argument, Fed.R.App.P. 28(a)(4), as to why this should make any difference. In any event, we think it

does not, as the information clearly states the elements of the offense and fairly informs Yasak of the charges against him so that he could prepare a defense. *See United States v. Johnson*, 805 F.2d 753, 758 (7th Cir.1986).

sonably understood; and we see no "fundamental ambiguity" which would have required the district court to remove the questions from a jury's consideration. *U.S. v. Martellano*, 675 F.2d at 942. Yasak's arguments were unpersuasive standing separately, and they gain no strength when banded together.

For the foregoing reasons, we hold the district court properly denied Yasak's motion to dismiss.

AFFIRMED.