UNITED STATES of America,
Plaintiff–Appellee,

v.

Timothy J. CICHON, Defendant–
Appellant.

No. 94–1154.

United States Court of Appeals,
Seventh Circuit.

Argued June 1, 1994.

Decided Feb. 21, 1995.

Robert Anderson, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Madison, WI, for plaintiff-appellee.

Morris D. Berman (argued), Giesen & Berman, Madison, WI, for defendant-appellant.

Before BAUER, COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Timothy J. Cichon was arrested on November 13, 1991, after he received from his coconspirator the money collected from an LSD sale earlier that day. He then cooperated with police for many months. On August 4, 1993, he was indicted by a federal grand jury for conspiracy to possess with intent to distribute LSD and conspiracy to distribute LSD, and for four substantive charges of distribution of LSD. Mr. Cichon originally entered a plea of not guilty; however, he later changed his plea to guilty on the conspiracy count, and reserved the right to appeal certain adverse rulings concerning his pretrial motions to suppress statements and to dismiss the indictment.[1]

Mr. Cichon's sentence was determined by measuring the actual weight of the LSD and its blotter paper carrier. Because the total weight exceeded 10 grams, the court imposed the statutory mandatory minimum sentence of 120 months, but reduced it by three levels, on the basis of Mr. Cichon's substantial assistance, to 78 months.

On this appeal, Mr. Cichon claims that the district court erred in its denial of his motion to dismiss the indictment on the ground that he was promised immunity. He also claims error in the district court's denial of his motion to suppress his statements on the ground that they were involuntary. He also appeals the district court's sentencing calculation; he submits that the district court ought to have applied the presumptive weight for LSD doses set forth in the 1993 amendment to § 2D1.1 of the Sentencing Guidelines. After hearing the argument of counsel, we decided to defer decision until the rendition of the court's en banc decision in *United States v. Neal*, 46 F.3d 1405 (7th Cir.1995). For the reasons that follow, we now affirm the judgment of the district court.

# I

## BACKGROUND

### A. *Facts*

On November 13, 1991, a confidential informant working with agents from the Wisconsin Department of Justice Division of Narcotics Enforcement (DNE) purchased about 600 doses of LSD from a man named Donald "Jamie" Weaver. When he was arrested, Weaver agreed to cooperate with the DNE agents. Later that evening, therefore, he met his coconspirator Timothy Cichon, from whom he said he had obtained the LSD, to turn over to him the proceeds from the LSD sale. The agents were able to record and to listen to the Weaver–Cichon conversation during the payoff meeting because Weaver wore a monitoring device. Once the money was delivered, the DNE agents arrested Mr. Cichon, took him into custody, and transported him to a nearby motel. His coconspirator Weaver, also in custody, was brought to an adjoining room in the motel.

Mr. Cichon and the DNE agents described in very different terms the events that occurred in the motel during that evening. Mr. Cichon claimed that the agents advised him that, if he cooperated, he would either be sentenced to probation or his case would be dismissed. However, if he did not cooperate, he was warned, he would be sentenced to seven years in prison, his cars and his parents' cars would be confiscated, and he might be assaulted by "mean guys" in prison. According to Mr. Cichon, when he asked the agents whether he could talk to a lawyer, their questioning did not cease. Instead, the agents responded that requesting a lawyer did not constitute cooperation, and that they would take him to Madison immediately if he asked for a lawyer.

The agents' depiction of the discussion in the motel was quite different. Special Agents Kostner and Ruff stated that they had indeed advised Mr. Cichon that he could be taken to Madison, where federal charges against him could be brought, and that the car he was driving at the time of his arrest could be subject to forfeiture. They also told him that "any cooperation would be brought to the prosecutor's attention." However, according to the officers, they did not mention a specific sentence that he might receive, or make promises or threats to coerce him into sentencing.

---

1. The remaining counts were dismissed upon

cooperating or confessing. Special Agent Kostner remembered that Special Agent Ohm had advised Mr. Cichon of his *Miranda* rights. However, Agent Ohm, who was not available to testify, later stipulated that he had no specific independent recollection of reading him those rights. When Mr. Cichon requested, the agents allowed him to speak by telephone with coconspirator Weaver. After that call, Mr. Cichon agreed to provide a statement and to cooperate with them. Following the two-hour interview, he took the agents to his house, where he surrendered about 400 additional dosage units of LSD. Mr. Cichon remained uncharged until the return of the indictment in this case on August 4, 1993.

## B. *District Court Proceedings*

A federal grand jury indicted Mr. Cichon on one count of conspiracy to possess LSD with intent to distribute it and conspiracy to distribute LSD, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and four counts of LSD distribution. After the arraignment, Mr. Cichon filed motions to suppress statements [2] and to dismiss the indictment; Mr. Cichon's affidavit was attached to the motions.[3] On September 20, 1993, an evidentiary hearing was conducted by a magistrate judge.

### 1. The Evidentiary Hearing

At the hearing, the magistrate judge first heard conflicting testimony concerning whether the DNE agents had explained to Mr. Cichon his *Miranda* rights. The agent who had supposedly advised Mr. Cichon of his rights, Special Agent Ohm, did not testify at the hearing. After the hearing, the parties filed with the court a stipulation that Special Agent Ohm did not remember advising Mr. Cichon of his *Miranda* rights. On the basis of that stipulation and the evidence presented at the hearing, the magistrate judge recommended that the court grant Mr. Cichon's motion to suppress his post-arrest statements.

The magistrate judge then heard other conflicting testimony concerning the agents' alleged coercion, threats and promises. In his Report and Recommendation, he considered in detail the circumstances surrounding Mr. Cichon's post-arrest detention to determine whether the defendant's statements were involuntary. He also considered such factors as Mr. Cichon's age, maturity, and intelligence, and determined that, "although some of what Cichon alleges did in fact happen, his will was not overborne." He found nothing unduly coercive about the environment in which Mr. Cichon was kept that evening. This determination was based on credibility determinations; he concluded that the testimony of the two agents was credible, but that Mr. Cichon's testimony was not. The magistrate judge specifically noted that he disbelieved Mr. Cichon's claims that he

**2.** The motion sought to suppress Mr. Cichon's statements made on November 13, 1991, and "all evidence, leads, and other fruits, tangible or intangible derived directly or indirectly from such statements." R. 11. In this court, Mr. Cichon does not argue that any other evidence admitted against him was the fruit of the suppressed statements.

**3.** The pertinent portions of Mr. Cichon's affidavit state:

4. I was told by law enforcement agents that I could cooperate with their investigation or they would immediately take me to Madison for prosecution in federal court.

5. I was told that if I did not cooperate, they would take all my cars and that my parents' house would be subject to forfeiture.

6. I was also advised that if I cooperated I would probably be sentenced to a term of three years but if I "really cooperated" I could get probation. I was also advised that some peo-

ple cooperated with law enforcement for a couple of years and that "we usually let them go." On the other hand, if I did not cooperate with law enforcement officers I would not see my parents for seven years.

7. I was advised by one law enforcement agent that there were lots of mean guys in prison. I was also advised that if I called a lawyer that would be an indication that I was not cooperating. Prior to the commencement of questioning, I was not advised of my rights, that is, my right to an attorney, my right to remain silent, and my right to an attorney at no expense to myself if I could not afford an attorney.

8. As a result of and in reliance on the above threats, inducements and promises, among others, I then responded to questions of the law enforcement agents.

R. 9. On the basis of that affidavit Mr. Cichon's attorney moved to dismiss the indictment and to suppress the statements made by Mr. Cichon on or about November 13, 1991.

was denied an attorney, that he sat for two hours without talking before his will was "overcome," and that the agents told him he would get seven years and probably would be assaulted in prison. He concluded that "telling Cichon of a possible transfer to federal court, possible sentences, and of likely seizures of property under the asset forfeiture statutes was an accurate assessment of Cichon's predicament," and therefore was not coercive. He further found that the conversation with Weaver "was the trigger that led Cichon to cooperate rather than any acts by the agents, or the time spent in silence." R. 47 at 19–20.

The magistrate judge then considered whether the agents had promised Mr. Cichon immunity, probation, or dismissal of the charges against him. He noted that, under this circuit's decision in *United States v. Cahill*, 920 F.2d 421, 425–27 (7th Cir.1990), *cert. denied*, 500 U.S. 934, 111 S.Ct. 2058, 114 L.Ed.2d 463 (1991), an agent is bound by his offer of immunity; however, in the absence of an actual promise of immunity, a defendant's belief that he is speaking under a grant of immunity renders that statement involuntary only if that belief was reasonable. The magistrate judge believed that the agents promised Mr. Cichon that, for his continued cooperation, he would be released that night rather than taken to Madison to be charged—and they kept that promise. However, he did not believe that the agents made other promises.

> Here, I believe the agents' testimony when they stated that no one promised Cichon that the charges would be dismissed, or that he would receive probation if he cooperated. It would be inconceivable for the agents to make such an offer to Cichon: they were DOJ agents who had been called into Ashland especially to track down those people who were distributing LSD locally. They caught Weaver, who led them to Cichon, who appeared to be the source. Why would they offer to let him go, on any terms? Why would they offer him probation?

R. 47 at 20–21. The magistrate judge concluded that the government neither coerced Mr. Cichon nor offered him improper induce-ments, and that the evidence reflected that Mr. Cichon's statements were voluntary. The magistrate judge therefore recommended that the court grant Mr. Cichon's motion to suppress his statements for violations of *Miranda* but deny his motion on all other grounds.

The magistrate judge also recommended that the court deny Mr. Cichon's motion to dismiss the indictment. Mr. Cichon claimed that he cooperated because the government promised him immunity for his cooperation, both on the night of his arrest and throughout the period of his active cooperation—a promise that it was now bound to honor. The agents denied making such a promise, and the magistrate judge believed the agents. He pointed out that the "illogic of offering street immunity or probation to an admitted large-quantity LSD distributor is such that the court cannot accept Cichon's representations on this matter in the absence of corroboration." R. 47 at 22. Because there was no written agreement or other corroboration, the court recommended denying the defendant's motion to dismiss. *Id.*

### 2. Plea Agreement and District Court Order

On November 12, 1993, Mr. Cichon signed a plea agreement and pled guilty to the conspiracy count of the indictment. The plea agreement, drafted by the government, specifically permitted Mr. Cichon to appeal his pretrial motions to suppress his statements and to dismiss the indictment. On the same day, he entered a plea of guilty to Count I of the indictment and was informed during the plea colloquy that he could appeal an adverse ruling on his pretrial motions.

Several days after the execution of the plea agreement, the district court, reviewing the recommendation of the magistrate judge, made findings of fact that did not depend on any of Mr. Cichon's post-arrest statements. Concerning the hours spent in the motel on November 13, 1991 after the arrest, the district court found:

> The defendant did not respond to the agents' initial request for his cooperation so they allowed him to sit in silence for about 45 minutes. At approximately 7:25

p.m. the agents began talking to the defendant again and did not advise him of his *Miranda* rights. The interview lasted about two hours. At the conclusion of the interview, based on statements made by the defendant, the agents drove him to his parents' house where he retrieved and surrendered about 400 more dosage units of LSD.

Order of November 17, 1993, R. 54 at 2. The court then adopted the magistrate judge's recommendation to suppress Mr. Cichon's statements because his *Miranda* rights were violated. It did not reach the merits of Mr. Cichon's other argument for suppressing the statements on the ground they were involuntary. The court believed this contention was moot once the statements had been suppressed for non-compliance with *Miranda:* "Defendant's statements need be suppressed but once." R. 54 at 2. The record contains no indication that Mr. Cichon, through counsel, ever asked that the district court revisit the issue of voluntariness on the ground that statements excluded for non-compliance with *Miranda* might still be used by the government for impeachment purposes. Finally, the court also found that there was no evidence to corroborate Mr. Cichon's testimony concerning the promised immunity and that Mr. Cichon's testimony, by itself, was not credible.

### 3. Sentencing Hearing

At the sentencing hearing held January 10, 1994, the district court determined that Mr. Cichon was accountable for 3,000 "hits" (doses) of LSD on the ground that Mr. Cichon could reasonably foresee that that amount of LSD was involved in the conspiracy. It then set forth two alternative calculations of the weight of the LSD and the resulting sentence. First, it used the presumptive weight employed by the revision to the Guidelines. *See* § 2D1.1, comment. (backg'd). It determined that Mr. Cichon's criminal history category was I and that, if each hit were counted at 0.4 milligrams, as the Sentencing Commission suggested, the weight of the 3,000 hits would be 1.2 grams, for an offense level of 26. After a downward adjustment of three levels for acceptance of responsibility, the total offense level would be 23, and the

guideline range for that level was 46 to 57 months. If, on the other hand, the total actual weight of the LSD distributed by Mr. Cichon, 12.589 grams (the weight of the LSD together with the blotter paper carrier medium), were the appropriate calculation, then the sentence would be measured at 120 months. The court heard arguments on whether the sentence should be "46 months or 57 months or something in between or 120 months less substantial assistance." The court then determined that the second methodology was the correct one. The court's Statement of Reasons in the judgment states:

> In determining this guideline the Court finds that as a member of the conspiracy defendant Cichon purchased at least 1,000 hits of LSD ... [on 3 dates] for a total of 3,000. The defendant further engaged in transactions from June 23, 1991 to November 13, 1991 where he was involved in the delivery of a part of 1,544 hits of LSD purchased by a confidential informant, having the balance in his possession. The weight of the 1,544 hits including the carrier medium for those hits is found to be at least 12.589 grams pursuant to *Chapman v. United States*, [cite] for the purpose of mandatory minimum sentencing. Utilization of the Sentencing Commission's guideline effective November 1, 1993 suggests a weight without the carrier medium of at least 1.2 grams. For purposes of sentencing under the mandatory minimum, however, *Chapman* controls, as acknowledged by said sentencing guidelines at commentary note 18 which discusses the guidelines computation and interprets it as follows. Nonetheless, this approach does not override the applicability of "mixture or substance" for the purpose of applying any mandatory minimum sentence. (*See Chapman,* § 5G1.1(b).)

Judgment, R. 57 at 5; *see also* R. 61 at 9–20 (oral ruling of the court at sentencing hearing). The court then granted the government's motion for downward departure because of Mr. Cichon's substantial assistance and reduced Mr. Cichon's term of imprisonment by sentencing him at the bottom end of level 28 to 78 months' imprisonment.

## II

## ISSUES

### A. *Denial of Motion to Dismiss the Indictment*

Mr. Cichon continues to assert before this court that the government agents promised him probation, immunity, or dismissal of his case in order to elicit his cooperation. He insists that his testimony on this issue was not rebutted by the government, and therefore stands unrefuted. On the basis of those promises, therefore, Mr. Cichon contends that the district court erred in denying his motion to dismiss the indictment. He relies on *United States v. Cahill*, 920 F.2d at 425, in which we stated that an agreement made by the government must be scrupulously performed.

■ We review a district court's denial of a motion to dismiss an indictment for abuse of discretion. *United States v. Thompson*, 25 F.3d 1558, 1562 (11th Cir. 1994) (claiming grant of immunity as ground for dismissal); *cf. United States v. Furman*, 31 F.3d 1034, 1037 (10th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 651, 130 L.Ed.2d 555 (1994) (claiming selective prosecution as ground for dismissal); *United States v. Fuzer*, 18 F.3d 517, 519 (7th Cir. 1994) (claiming pre-indictment delay as ground for dismissal). When reviewing the district court's factual findings regarding the governmental conduct upon which the denial is based, we apply the clear error standard. In this case, the record of the evidentiary hearing supports the determination of the district court. Special Agents Ruff and Kostner testified that no promises were made to Mr. Cichon; it was not necessary that they take the stand again to rebut Mr. Cichon's contrary assertions. After observing the witnesses, the magistrate judge determined that the agents' testimony, and not Mr. Cichon's, was credible and that no promises of immunity had been made to the defendant: "I do not believe, however, that the agents ever actually made such promises." R. 47 at 22. The district court made a similar finding of fact: "None of the agents threatened the defendant. No one promised him immunity from prosecution if he cooper-

ated. No one told the defendant that attempting to contact an attorney would be a sign that he did not want to cooperate." R. 54 at 2. Thus the only evidence in the record that promises had been made to Mr. Cichon were his own claims.

■ The question whether the government breached its promise of immunity or dismissal of the charges "turns largely on the district court's determinations of credibility." *Cahill*, 920 F.2d at 426. Absent clear error we rely on the district court's credibility rulings. *United States v. Sablotny*, 21 F.3d 747, 751 (7th Cir.1994). The magistrate judge found that it was not logical for the agents to offer immunity or probation to Mr. Cichon, "an admitted large-quantity LSD distributor." After failing to find an independent basis in the record for Mr. Cichon's representations, the magistrate judge concluded that he would not recommend dismissal of the indictment "on the claim of an oral promise made by the agents that the agents deny making and for which there is no corroboration." R. 47 at 22. The district court considered Mr. Cichon's objections to the magistrate judge's report and also concluded that the record contained no basis for believing that Mr. Cichon was promised any sort of immunity by the agents: "Absent any corroboration the Court does not believe Cichon's testimony that he was promised immunity." R. 54 at 3. We can find no clear error in the two credibility determinations. Accordingly, we shall not disturb the ruling of the district court.

### B. *Voluntariness of Mr. Cichon's Statements*

■ Mr. Cichon also contends that the statements he made to the agents on November 13, 1991, were induced by the agents' promises of leniency and immunity, and therefore were involuntary. Relying on *Cahill*, 920 F.2d at 427, he also asserts that his continued cooperation was induced by promises that he reasonably believed, even if no explicit offer of immunity was made. He recognizes that the statements at issue were suppressed because the agents did not comply with the requirements of *Miranda*, but nevertheless maintains that the district court

should have reached the issue of voluntariness because there remained the possibility that the government, although barred from using the statements as part of its substantive case, would use them to impeach his testimony.[4]

■ Mr. Cichon correctly notes that the district court explicitly did not rule on the voluntariness of the defendant's statements. In the court's view, the suppression of the statements on *Miranda* grounds sufficed and it was unnecessary to reach the question of voluntariness. Notably, the defense never pointed out to the district court, by motion for reconsideration or otherwise, that it was concerned about the possible use of the statements for impeachment and therefore required a ruling on voluntariness. However, the government does not argue that the issue has been waived and therefore we shall not pursue the matter further. *See, e.g., United States v. Baker*, 40 F.3d 154, 160 (7th Cir. 1994) (reviewing defendant's sufficiency of evidence argument because government waived defendant's waiver of the issue in district court); *United States v. Anaya*, 32 F.3d 308, 312 (7th Cir.1994) (concluding that, because government failed to argue that defendant waived his objection, it waived waiver); *United States v. Stone*, 987 F.2d 469, 471 (7th Cir.1993) (stating that the "government waived the defense of waiver by failing to raise it on appeal"); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) (stating that "claims of waiver may themselves be waived"). The government also omits another argument: whether Federal Rule of Criminal Procedure 11(a)(2) [5] permits a conditional plea to determine whether certain statements might be used for impeachment purposes only. Therefore, we also shall not resolve definitively that issue.[6]

■ Assuming arguendo that Mr. Cichon is correct in his estimation that the district court should have reached the issue of voluntariness, we do not believe that its failure to do so constitutes reversible error under the facts before us. We note that, while giving great deference to the findings of fact of the trial judge, especially when credibility matters are implicated, we traditionally have considered the ultimate issue of the voluntariness of a confession to be one of law that we can review de novo. *United States v. Montgomery*, 14 F.3d 1189, 1194 (7th Cir. 1994) (citing *United States v. White*, 979 F.2d 539, 544 (7th Cir.1992); *United States v. Church*, 970 F.2d 401, 403–04 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1009, 122 L.Ed.2d 157 (1993); *United States v. McGuire*, 957 F.2d 310, 315 (7th Cir.1992)). Indeed, the United States, in an appeal brought by the government and now *sub judice*, has argued with great vigor that our traditional approach is the correct one in light of current Supreme Court precedent. *See United States v. D.F.*, No. 94–2900, Government Br. at 17 (relying on *Miller v. Fenton*, 474 U.S. 104, 110, 106 S.Ct. 445, 449–50, 88 L.Ed.2d 405 (1985) and *Montgomery*, 14 F.3d at 1194, for its position that the voluntariness of a statement is subject to de novo review).[7] Therefore it is our responsibility to

---

4. Statements suppressed because of a *Miranda* violation might still be admissible for impeachment purposes. *See Harris v. New York*, 401 U.S. 222, 224, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971) (defendant's prior inconsistent statements were properly used to impeach his trial testimony).

5. Rule 11(a)(2) allows conditional pleas:
   **(2) Conditional pleas.** With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

6. *Cf. United States v. Doherty*, 17 F.3d 1056, 1058 (7th Cir.1994) (noting that conditional pleas are allowed only when the appellate court's decision will completely dispose of the case); *United States v. Markling*, 7 F.3d 1309, 1313 (7th Cir. 1993) (quoting *United States v. Wong Ching Hing*, 867 F.2d 754, 758 (2d Cir.1989) for the proposition that the issue reserved on a conditional guilty plea must " 'dispose of the case either by allowing the plea to stand or by such action as compelling dismissal of the indictment or suppressing essential evidence' " (quoting Advisory Committee Note to 1983 Amendment of Fed. R.Crim.P. 11)); *United States v. Yasak*, 884 F.2d 996, 999 (7th Cir.1989) (noting that Rule 11(a)(2) "ensures that conditional pleas will be allowed only when the appellate court's decision will completely dispose of the case").

7. *But cf. Johnson v. Trigg*, 28 F.3d 639, 645 (7th Cir.1994) (noting that members of this court

make the ultimate determination on the issue of voluntariness. As we said in *Montgomery*:

Despite the deference we accord to the lower court's factual findings and credibility assessments, we must independently evaluate the ultimate question of voluntariness, as it is one of law subject to review de novo.

14 F.3d at 1194.

■ . The record before us can support but one conclusion on the issue of voluntariness. The magistrate judge, with great thoroughness and professional detachment, reviewed in detail the circumstances surrounding the November 13, 1991 statements to decide whether they had been coerced. The magistrate judge concluded that Mr. Cichon's statements were voluntary: "[T]he government did not coerce Cichon and it did not offer him improper inducements to make him talk." This determination was reached after examining Mr. Cichon's age, maturity, background and intelligence, the environment in which the defendant was kept that evening, and the possibility of physical or mental coercion during the interrogation.

The district court did not rule on the ultimate legal issue of voluntariness. However, the district court did explicitly find that "[n]one of the agents threatened the defendant. No one promised him immunity from prosecution if he cooperated. No one told him that attempting to contact an attorney would be a sign that he did not want to cooperate." R. 54 at 2. The district court also made it clear that it disbelieved Mr. Cichon's testimony that he was promised immunity. We believe that these findings of fact by the district court make only one conclusion possible with respect to the voluntariness of the statements. When assessing the voluntariness of statements, we have traditionally relied on a number of factors:

A confession is voluntary if, in light of the totality of the circumstances, the confession "was not secured through psychological or physical intimidation but rather was the product of a rational intellect and free will." We have in earlier cases found certain factors relevant to determining voluntariness: the age of the defendant, her education, the nature of the questioning, the use of physical punishment, whether the defendant was read her rights, the duration of the questioning, the defendant's prior experience with police, and whether the defendant was under the influence of drugs or alcohol.

*Sablotny*, 21 F.3d at 750 (citations omitted). These factors must be assessed "from the perspective of a reasonable person in the defendant's position at the time of the statement," and in light of those factors. *Montgomery*, 14 F.3d at 1194.

After reviewing the record from the point of view of a reasonable person in the defendant's position at the time of the statements, *United States v. Haddon*, 927 F.2d 942, 946 (7th Cir.1991), we conclude from the totality of the circumstances that Mr. Cichon's statements were voluntary.[8]

## C. *U.S.S.G. § 2D1.1(c)*

The district court recognized that the 1993 amendment to § 2D1.1(c) altered the method for calculating the weight of LSD:

In the case of LSD on a carrier medium (*e.g.*, a sheet of blotter paper), do not use the weight of the LSD/carrier medium. Instead, treat each dose of LSD on the carrier medium as equal to 0.4 mg. of LSD for the purposes of the Drug Quantity Table.

However, the court determined that it was required to use the actual weight of the LSD and its carrier medium to determine the applicability of a statutory mandatory minimum. This issue is controlled by this court's

have questioned the applicability of plenary review to the issue of voluntariness of a confession).

8. Finally, we note that Mr. Cichon does not suggest that the suppression of his statements for all purposes, including impeachment, would have induced him to go to trial. Had the case proceeded to trial, the government had an overwhelming case: the tape-recorded conversation of Mr. Cichon receiving money from Weaver for the LSD, testimony of Weaver, Western Union records reflecting payments from Mr. Cichon to his California source for LSD.

decision in *United States v. Neal,* 46 F.3d 1405 (7th Cir.1995) (en banc).

### Conclusion

The district court committed no reversible error with respect to the motions to suppress and to dismiss. Its ruling on the appropriate methodology for sentencing LSD traffickers is in accord with the law of this circuit. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.