UNITED STATES of America, Appellee,

v.

Glenn Moore HAWKINS, Appellant.

UNITED STATES of America, Appellee,

v.

Melvin WILLIAMS, Appellant.

Nos. 85–5109, 85–5110.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1986.

Decided April 7, 1986.

Rehearing Denied May 16, 1986.

Howard Cardin and Robert B. Schulman (Schulman & Treem, P.A., Baltimore, Md., on brief), for appellants.

Earle Giovanniello and John Martin, Sp. Asst. U.S. Attys. (Elsie L. Munsell, U.S. Atty., Justin W. Williams, Asst. U.S. Atty., Laurie K. Kloster, Sp. Asst. U.S. Atty., Joseph J. Aronica, Asst. U.S. Atty., Alexandria, Va., on brief), for appellee.

Before WINTER, Chief Judge and SPROUSE and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

Appellants Glenn Moore Hawkins and Melvin Williams were convicted by a jury in the Eastern District of Virginia of attempting to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 846, 841(a)(1) (1982) and 18 U.S.C. § 2 (1982). Defendant Hawkins and Erstelle Datcher were convicted of traveling in interstate commerce to promote an unlawful activity in violation of 18 U.S.C. § 1952(a)(3) (1982). Williams was also convicted of causing others, and aiding and abetting others, to travel in interstate commerce to promote an unlawful activity in violation of 21 U.S.C. § 841(a)(1) (1982). In addition, Williams was convicted of using a telephone in facilitating the attempted possession of cocaine with intent to distribute in violation of 21 U.S.C. § 843(b) (1982).

Appellants raise several exceptions, but we find that only three warrant discussion. First, Hawkins contends that under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (1982), the period of delay caused by the government's appeal of an order admitting Hawkins to bail should not be excluded in determining whether he was brought to trial within seventy days of the filing of the indictment or from his first appearance before a judicial officer. Second, they except to the introduction of evidence taken from Williams' residence under a search warrant. They also claim that the affidavit supporting the warrant did not establish probable cause because certain information contained in the affidavits resulted from an illegal wiretap and because information dealing with the unreliability of an informant was not brought to the attention of the magistrate. Third, appellants correctly note the error of the district court in adding a special parole term of five years to the sentence of each defendant under Count 1 of the indictment. For the reasons hereinafter stated, we find no error in the trial of the case, and we affirm, but we vacate the special parole term of five years added to the sentence of each defendant under Count 1 of the indictment.

I

Appellants were arrested on December 6, 1984, in Baltimore, Maryland, and on December 10 they were ordered removed to the Eastern District of Virginia and held without bond. They were arraigned in Alexandria on December 17, 1984. Shortly thereafter, they moved for a revocation of the magistrate's detention order; on December 21, 1984, the district court reversed the magistrate's order and set a bail bond of $200,000. The United States immediately appealed, and on January 15, 1985, this court reversed the district judge's order admitting defendants to bail. 753 F.2d 329. The trial of the case began February 5, 1985, and the jury returned its verdict of guilty on all counts on February 7, 1985.

Appellant Hawkins was previously indicted on July 3, 1984, on the same charges

contained in the present indictment. The first indictment was dismissed on the government's motion on August 27, 1984. It is obvious from a review of the record that the first indictment was dismissed because Walter Robinson, a codefendant named therein, entered into a plea agreement with the United States and supplied information used by the grand jury to indict Melvin Williams, who was not a defendant in the first indictment. The parties are in agreement that fifty-three days of speedy trial time elapsed before the first indictment was dismissed.

Drug Enforcement Administration agents executed a search warrant of Melvin Williams' home on December 5, 1984, and found several firearms and a large quantity of gold jewelry. The warrant was supported by fifty pages of affidavits. Appellants contend that these affidavits were based in part on information obtained from illegal wiretaps and that the affidavits did not set forth the unreliability of one of the sources of information. The affiants were five members of the Baltimore Police Department with years of experience in drug investigations.

## II

■ It is Hawkins' position that the speedy trial clock, which had consumed fifty-three days during the first indictment, began to run again on December 18, 1984, and ran for ten days until he made a number of pretrial motions on December 28, 1984. The district court had these motions under advisement until its ruling on January 25, 1985, and Hawkins admits that this period is excluded under § 3161(h)(1)(F). Hawkins asserts that the clock commenced to run again on January 26, 1985, and ran eleven days until the trial began February 5, 1985. Under Hawkins' figures, these three periods of time total seventy-four days and thereby violate the requirements of the Speedy Trial Act. We reject his computation because it does not exclude the time used for the government's appeal of the bail order.

Our examination of the clear language of § 3161(h) convinces us that the time used to appeal the bail order is excludable from the seventy-day period provided by the statute. Section 3161(h) provides:

The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which a trial of any such offense must be considered:

(1) any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

.    .    .    .    .

(E) delay resulting from any interlocutory appeal;

.    .    .    .    .

(J) delay reasonably attributable to any period, not to exceed 30 days, during which any proceeding concerning the defendant is actually under advisement by the court.

The appeal of the bail order certainly concerned the defendant, and the language of § 3161(h)(1) and its subparts (A) through (J) clearly indicates that the listed subparagraphs are merely illustrative and are not intended to be the only proceedings concerning the defendant that would result in a tolling of the seventy-day period.

Under both (E) and (J), the time for the government's appeal of the bail order is excluded. This appeal was clearly interlocutory: It occurs between the commencement of the litigation and the conclusion thereof, and it decides one issue but not the entire controversy. The appeal of the bail order would also be excluded under (J) because it was a proceeding concerning the defendant and was under advisement for a period not exceeding thirty days. *See United States v. Black*, 733 F.2d 349 (4th Cir.1984).

The time for the interlocutory appeal ran from December 21, 1984, when the government filed its notice of appeal, until January 15, 1985, when this court reversed the bail order. On January 15, 1985, the district court still had under advisement the

defendants' pretrial motions, which were decided on January 25, 1985. Therefore, all time between December 21, 1984, and January 25, 1985, was excludable. As a result, only sixty-seven days of speedy trial time elapsed between Hawkins' first appearance under the first indictment and the beginning of his trial under the second indictment. The language of § 3161(h)(1) is unambiguous, and under *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981), this language must ordinarily be regarded as conclusive.

### III

■ Both appellants moved to suppress certain evidence obtained from the search of Williams' home on December 5, 1985. Hawkins did not reside at the Williams residence, and there was no evidence that would support any expectation of privacy by him in the residence or its contents. Since Hawkins had no expectation of privacy, he had no fourth amendment protection as to this search. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

Williams makes two points in attacking the search warrant. First, he claims that much of the information in the affidavits filed with the magistrate was obtained through the use of illegal wiretaps or was the fruit of such illegal wiretaps. Second, he claims that the officers did not advise the issuing magistrate that Walter Robinson had "flunked" a polygraph examination conducted by an FBI agent at the request of the United States Attorney to determine Robinson's reliability. Appellants assert that if the wiretap information and Walter Robinson's information is removed from the affidavits, there is not enough remaining to establish the probable cause required to issue the search warrant.

Williams claims that any information resulting from the wiretap should be excluded because this electronic surveillance, although court approved, was not authorized as a part of an investigation of the present defendants. He also claims that the affidavits used to obtain the wiretap orders were not sufficient.

The trial judge did not rule on the legality of the wiretaps, but considered the affidavits filed in support of the search warrant of the Williams residence as if redacted to exclude any information based upon the wiretaps. He found, "looking at the four corners of it and taking out the wiretap information, I think there is probable cause for the magistrate." He followed this conclusion with his statement of other evidence in the affidavits that supported probable cause to issue the warrant. The action of the district judge in considering the affidavits without the wiretap information is in keeping with *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) and *United States v. Karo*, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). In *Franks v. Delaware*, the court stated:

> In sum, and to repeat with some embellishment what we stated at the beginning of this opinion: There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard

is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue. 438 U.S. at 171, 98 S.Ct. at 2684.

We have no finding by the district court that the wiretaps used to develop certain information in the affidavits were illegal. There is only the claim of illegality by the appellants, and the trial judge took the cautious approach and disregarded this information. There is no claim that the affiants (the police officers and drug agents) made deliberate false statements or recklessly disregarded the truth in preparing the affidavits.

In discussing the affidavits without considering the wiretap information, the trial judge mentioned Walter Robinson, who was very knowledgeable in drug matters. Robinson stated that he had received $100,-000 from Williams at Williams' home in order to buy cocaine for distribution, that he had received a cutting agent from Williams, and that cocaine was distributed at Williams' nightclub, known as "The Underground." There were other informants indicating that drugs were distributed at the nightclub. There were the affidavits of officers concerning their knowledge as to the drug culture and Williams' connection therewith.

Also, there were the statements, resulting from surveillance of Williams' home, that he frequently walked a short distance from his house to a pay telephone. This activity was in keeping with a drug dealer's effort to keep telephone calls from being traced. The drug agents had a clone telephone beeper for Williams' telephone contact beeper, and it indicated a suspicious pattern of calls to other suspected members of the distribution organization. Williams also had unexplained income, and it is customary for drug dealers to maintain certain books, records, and other evidence of their activities in their homes.

Other information available was that Melvin Williams was on parole for a prior narcotics-related conviction and the statement by Robinson's wife that Williams had told her that he had lost $100,000 on Walter Robinson and was not going to help him arrange bail.

The claim that Walter Robinson "flunked" his polygraph test is exaggerated. The report of the polygraph examiner, an FBI agent, indicates deception when answering two of the questions asked during the polygraph examination, which was quite lengthy. The two questions showing deception were whether Robinson saw Williams give the money to Hawkins to purchase the cocaine and whether Williams said he would finance the cocaine deal. These were important questions, but the FBI had information which corroborated almost all of the other information given by Walter Robinson and used in the affidavits.

The magistrate knew that there was some question about Walter Robinson's veracity because he was aware that Robinson was named as a defendant in the original indictment, denied any involvement in the offense, and later entered into an agreement with the government and admitted his participation in the crime. Failure to advise the magistrate of the results of Robinson's polygraph examination is not the deliberate falsity or reckless disregard for the truth mentioned in *Franks*. The fifty pages of affidavits submitted to the magistrate, even when redacted, contained ample support for a finding of probable cause.

## IV

Appellants were convicted of attempted possession of cocaine with intent to distribute in violation of 21 U.S.C. § 846; in addition to a sentence of fifteen years and a fine of $25,000, the court imposed a special parole term of five years. In *Bifulco v. United States,* 447 U.S. 381, 398, 100 S.Ct. 2247, 2257–58, 65 L.Ed.2d 205 (1980), the Supreme Court found that Congress did

205

not authorize the sentencing court to impose a term of special parole upon a defendant convicted under this section. In *United States v. Webster,* 639 F.2d 174 (4th Cir.1981), we found the proper action in these circumstances was to vacate the special parole sentences. Therefore, we vacate the special parole term of five years which was added to the sentences of appellants Glenn Moore Hawkins and Melvin Williams as a result of their convictions under Count 1 of the indictment. On every other point, we affirm.

AFFIRMED IN PART AND VACATED IN PART.