818 F.2d 29
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SCRAPP INVESTMENT CO., INC. Plaintiff--Appellant,
v.
UNITED STATES OF AMERICA Defendant--Appellee
 No. 86-1670.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1987.
Decided May 1, 1987.
 
 Before WIDENER and HALL, Circuit Judges, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.
 Stuart Jay Snyder for appellant.
 Larry David Adams, Assistant United States Attorney (Breckinridge L. Willcox, United States Attorney on brief) for appellee.
 PER CURIAM:
 
 
 1
 Scrapp Investment Company, Inc. ("Scrapp") appeals an order of the district court dismissing its complaint, brought pursuant to Fed. R. Crim. P. 41(e),1nforthereturn of a car seized by agents of the Drug Enforcement Administration (TIDEAT') and forfeited under 21 U.S.C. Sec. 881, as property purchased with the proceeds of illegal drug activities. Finding no error, we affirm.
 
 I.
 
 2
 On December 5, 1984, special agents of the DEA and the Internal Revenue Service, as well as members of the Baltimore City Police Department, searched the residence of Melvin Williams in Baltimore, Maryland, and seized, among other things, a 1982 Maserati Quattroporte automobile, titled in the name of Scrapp and parked in front of Williams' home. The search and seizure were the result of a long and intensive investigation by state and federal agents concerning the drug activities of Williams and the organization which he headed in Baltimore. A warrant had been issued on November 29, 1984, by a United States Magistrate, listing specific categories of property to be seized from Williams' home, including documents, books, records, currency, jewelry, and firearms. The agents' affidavit had indicated the lack of other income to be attributed either to Williams or to his wife, Mary. The Maserati, however, was not specifically listed among the items of property to be seized.
 
 
 3
 The record in the instant case reveals that the Maserati was registered on May 11, 1983, to Scrapp and that another organization, Bel Air Auto Mart, was listed as a lien holder. At the time the vehicle was seized, Williams was an employee of Scrapp and his wife, Mary, as well as his father-in-law, were both officers of the corporation. In addition, Williams had formerly been president of Scrapp until sometime in the late 1970's.
 
 
 4
 Williams, who has a long history of drug convictions, was tried by a jury and on February 5, 1985, was convicted of inter alia, attempted possession of cocaine with intent to distribute in the Eastern District of Virginia, in violation of 21 U.S.C. Secs. 846, 841(a)(1), and 18 U.S.C. Sec. 2. That conviction was sustained by this Court in United States v. Hawkins and Williams, 788 F.2d 200 (4th Cir. 1986).[2]
 
 
 5
 On April 26, 1985, DEA mailed a notice to Williams, both at his home address and at Scrapp, as well as to Bel Air Auto Mart. The notice stated that the Maserati had been seized and forfeited, pursuant to federal forfeiture statutes and regulations, and provided the opportunity to file within thirty days a petition for the remission or mitigation of the forfeiture. Subsequently, Williams filed such a petition, stating that he had an equitable interest in the car and that Bel Air Auto Mart had legal title. Williams denied any connection between the car and illegal drug activity.
 
 
 6
 Williams' petition was denied on July 10, 1985, on the ground that there was "probable cause to believe that the vehicle was purchased with the proceeds of the petitioner's drug dealing activities." No other petitions for remission or mitigation were filed by any other party and the car was subsequently given to the City of Baltimore, pursuant to the government's authority to equitably share forfeited property with local and state police officials.
 
 
 7
 Five months later, on December 13, 1985, Scrapp filed a complaint for the return of the car under Fed. R. Crim. P. 41(e), alleging that the Maserati had been illegally seized a year earlier. The district court ordered the government to show cause and to supply evidence of probable cause for the seizure of the Maserati on the ground that it was connected to drug transactions.
 
 
 8
 On March 24, 1986, the government filed copies of a report dated June 27, 1985, of a DEA investigation which recommended the denial of Williams' petition for remission. According to this report, Williams purchased the Maserati for $52,472 on March 18, 1983, by placing a down payment of $10,000 in cash, consisting of old $10 and $20 bills "wrapped with rubber bands and brought (into the Maserati dealership) by Mr. Williams inside a leather pouch." The balance of $42,472 was later paid with a check from Bel Air Auto Mart.
 
 
 9
 The report further stated that according to Quincy Edwards, owner of Bel Air Auto Mart, Williams had approached him in May, 1983, seeking to arrange the sale and financing of the vehicle from the dealership to Scrapp. Edwards stated that williams signed over a check to him for the car, in the amount of $25,469.75, representing insurance proceeds covering the loss of Williams' 1981 BMW automobile. Finally, after detailing Williams' numerous arrests for drug-related offenses dating back to 1963, as well as his previous narcotics convictions, the report concluded by stating as follows:
 
 
 10
 In the year 1981, Melvin and Mary WILLIAMS reported approximately $16,000 income. This investigation to date revealed that Melvin WILLIAMS expended a far greater amount than what he reported on tax returns. It was during this time period that Melvin WILLIAMS acquired the 1981 BMW, with no lien recorded.
 
 
 11
 In the year 1983, Melvin and Mary WILLIAMS reported approximately $66,000 income. During this time period the 1982 Maserati was acquired by melvin WILLIAMS. While the vehicle itself was in the name of "SCRAPP INVESTMENTS" and monthly payments on an alleged lien of $28,000 from Bel Air Auto Mart were being made through the Corporation. [sic] The Corporate books reveal that the vehicle was not an asset; also information received to date through this investigation that John Quincy Edwards trading as Bel Air Auto Mart is a long time personal friend of Melvin WILLIAMS and that Melvin WILLIAMS has stated to others that he did not want expensive vehicles in his own name. in addition information received to date indicates that John Quincy Edwards T/A Bel Air Auto Mart has been known to record false liens on vehicles purchased through him and in the case of Melvin WILLIAMS one false lien has been documented.
 
 
 12
 Although Scrapp received a copy of this report, it filed no response. The district court concluded that the facts derived from DEA's investigation were sufficient to "clearly establish probable cause to believe that the Maserati was purchased with proceeds from illegal drug transactions." The court also noted the presence of other factors which it found prevented the exercise of its equitable jurisdiction. These included an ongoing grand jury investigation of Williams and the government's need of the car as evidence in that investigation, as well as adequate legal remedies which were available to Scrapp either through an independent action for return of the property, if the grand jiiry chose not to indict Williams, or through a suppression motion if an indictment were returned. Accordingly, the district court dismissed Scrapp's complaint, concluding that an evidentiary hearing was not necessary.
 
 
 13
 This appeal followed.
 
 II.
 
 14
 On appeal, Scrapp contends that the district court erred in dismissing its Rule 41(e) complaint without an evidentiary hearing. Specifically, Scrapp argues that the Maserati was illegally seized without probable cause at the time of the seizure on December 5, 1984, and that appellant never received proper notice of the car's seizure or forfeiture. Under the circumstances present here, we find no merit in appellant's contentions.
 
 
 15
 The instant case clearly involves a forfeiture of property and is not a search and seizure case. Scrapp's action is nothing more than an attempt to circumvent the finality of a forfeiture decision by belatedly interjecting arguments regarding the illegality of the initial seizure through Rule 41(e). This we cannot sanction.
 
 
 16
 Based upon DEA's investigative report, the government clearly had probable cause to believe that the car in this case was purchased with drug proceeds and was, therefore, subject to forfeiture under Sec. 881.[3] The mere fact that the report was not prepared until six months after the car was initially seized does not mean that probable cause was lacking on the date of the seizure in December, 1984. Moreover, even an illegal seizure is not necessarily fatal to a forfeiture of the seized property if the basis for forfeiture can be sustained by independent and untainted evidence. United States v. One 1978 Mercedes Benz, Four-Door Sedan, 711 F.2d 1297, 1303 (5th Cir. 1983); United States v. One (1) 1971 Harley-Davidson Motorcycle, 508 F.2d 351, 351-352 (9th Cir. 1974) (per curiam).
 
 
 17
 Furthermore, we do not believe that the application of Rule 41(e) is required to protect Scrapp's interest. Here, Williams responded to the government's notice of forfeiture, while Scrapp, an organization with which Williams and his family have been directly and intimately connected for many years, chose not to act in any way to assert an ownership interest in the Maserati until more than one year after its seizure and five months following the denial of Williams' petition for remission. Then, even after filing the instant action, appellant failed to respond to the government's submitted evidence of probable cause. Given these facts, appellant's tardy and inappropriate resort to Rule 41(e), as well as its arguments concerning the alleged illegality of the seizure and lack of due process, are singularly unconvincing. Accordingly, we conclude that under the circumstances, the district court did not err in dismissing the instant complaint without a hearing and in holding that Scrapp's remedies, if any, fall outside the scope of a Rule 41(e) proceeding.
 
 III.
 
 18
 For the foregoing reasons, the order of the district court is affirmed.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Fed.R.Crim.P. 41(e) provides in pertinent part that:
 A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion.
 
 
 [2]
 In affirming the conviction, we rejected Williams' contentions regarding the validity of the search warrant issued on November 29, 1984
 
 
 [3]
 21 U.S.C. Sec. 881(b)(4) provides that:
 Any property subject to civil or criminal forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when--