461 S.E.2d 101

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Bruce Allen LILLY, Defendant Below, Appellant,**

**and**

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Cecil Wayne LILLY, Defendant Below, Appellant.**

**Nos. 22541, 22542.**

Supreme Court of Appeals of West Virginia.

Submitted May 16, 1995.

Decided July 17, 1995.

Concurring Opinion of Justice Cleckley July 19, 1995.

---

8. The majority was certainly cursory in its review of this issue, giving it *one paragraph!*

Richard H. Lorenson, Pros. Atty. of Greenbrier County, Lewisburg, for appellee.

Paul S. Detch, Lewisburg, for appellant, Bruce Allen Lilly.

Barry L. Bruce, Barry L. Bruce & Associates, Lewisburg, for appellant, Cecil Wayne Lilly.

FRED L. FOX, II, Judge:[1]

■ The issue before us, brought in the context of a proceeding pursuant to Rule 11(a)(2) of the West Virginia Rules of Crimi-

---

1. Pursuant to an administrative order entered by this Court on 18 November 1994, the Honorable Fred L. Fox, II, Judge of the Sixteenth Judicial Circuit, was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing 1 January 1995 and continuing through 31 March 1995, because of the physical incapacity of Justice W.T. Brotherton, Jr. On 14 February 1995 a subsequent administrative order ex-

nal Procedure,[2] challenges the sufficiency of the information considered by a magistrate in determining probable cause for the issuance of a search warrant. We hold that the appellants' motion to suppress should have been granted because we find the information was insufficient to establish probable cause. Accordingly, we reverse the judgment of the circuit court.

## I.

### FACTS AND PROCEDURAL HISTORY

On 13 April 1993, Greenbrier County Deputy Sheriff Corporal D.L. Livingston requested a warrant to search the residence of the appellants, Bruce Allen Lilly and Cecil Wayne Lilly. This request was based on information received from a supposedly confidential and reliable informant who said the appellants were growing marijuana at their residence.

Following a search of their residence, the appellants were arrested and charged with violations relating to the manufacture and possession of controlled substances and alcoholic liquors. Prior to trial, the appellants moved to suppress the seized evidence on the grounds the search warrant affidavit was "bare bones and conclusory" and insufficient to establish probable cause. The affidavit provided, in relevant part:

> "A reliable confidential informant informed Cpl. H. Whisman, that accused was growing marijuana plants in above residence. Cpl. Livingston spoke to informant and was advised by informant that accused has 30–50 plants in residence and also advised Cpl. Livingston that informant has seen the plants within the last 5 days and accused told informant that the plants were marijuana." /s/ Corporal D.L. Livingston.

An evidentiary hearing on the motion to suppress was held on 22 November 1993. The focus of this hearing concerned the sufficiency and truthfulness of the search warrant affidavit. At the hearing, counsel for Cecil Lilly called the magistrate who issued the search warrant to testify. The magistrate stated she did not electronically record any testimony regarding the affidavit nor was a court reporter present. On cross-examination, the prosecuting attorney asked the magistrate if she could recall any of the circumstances surrounding the issuance of the warrant. Specifically, he asked if she believed Corporal Livingston had a "follow-up conversation" with the informant in addition to the original tip that the appellants were growing marijuana in their house. Counsel for Cecil Lilly objected to the testimony and argued it was impermissible to take additional evidence beyond the "four corners" of the affidavit. The objection was overruled. The magistrate responded by stating she "issued the warrant based upon the wording in there that said the informant had been in the residence and did know and was informed by the accused that that was marijuana ... that was the reason that I felt the informant was reliable."

The prosecuting attorney called Corporal Livingston to testify. On cross-examination, Corporal Livingston indicated that he had no personal knowledge of the informant's reliability or veracity and his prior statement about the informant's reliability was based on information furnished by Corporal Jake Whisman to the effect that he (Whisman) had previously used the informant. According to Corporal Livingston, Corporal Whisman told him the informant "basically wasn't playing with a full deck, but all the information he

tended this assignment until further order of said Court.

**2.** Following the circuit court's denial of the motion to suppress, the appellants entered into a conditional plea arrangement with the State. The circuit court approved the arrangement pursuant to Rule 11(a)(2) of the West Virginia Rules of Criminal Procedure:

> **Pleas.** (a) *Alternatives*....
> (2) Conditional Pleas. With the approval of the court and the consent of the state, a defendant may enter a conditional plea of guilty or

nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

Under the terms of the conditional plea, the appellants pleaded guilty to the felony offense of manufacturing a controlled substance, but specifically reserved their right to appeal the circuit court's denial of the motion to suppress the evidence found in their residence.

had given him had been reliable." Corporal Whisman also testified and indicated that over the years he spoke with the informant on a number of occasions when he needed general information about people and the area where the informant lived. He further said that approximately ten to twelve years ago the informant gave him information to apprehend a person who subsequently was institutionalized for a mental problem. Corporal Whisman stated he had not used the informant for a case which resulted in a conviction.

After hearing the testimony, the circuit court scheduled another hearing to be held on 14 December 1993, to rule on the motion to suppress. At the conclusion of that hearing, the circuit court denied the motion. Thereafter, the appellants accepted a conditional plea agreement whereby they were to plead guilty to the felony offense of manufacturing a controlled substance. On appeal, the appellants assert the circuit court erred when it denied their motion to suppress.

## II.

## DISCUSSION

The appellants in this appeal raise several important Fourth Amendment issues: (1) whether the magistrate violated the "four-corner" doctrine when she allegedly relied and used information outside the affidavit to find probable cause; (2) whether the police intentionally or recklessly gave false information to the magistrate to secure the search warrant; and (3) whether the information given to the magistrate was sufficient. The prosecuting attorney asks this Court to de-

cide the vitality of the "good faith" exception to West Virginia proceedings. We find only two of the appellants' contentions merit discussion. After a brief discussion as to the standard of review applicable to this case, we address both contentions *seriatim*.[3]

### A.

#### *Standard of Review*

■ The standard of review of a circuit court's ruling on a motion to suppress is now well defined in this State. *See State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994) (discussing at length the standard of review in a suppression determination).[4] By employing a two-tier standard, we first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law[5]; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. *See State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886, 891 (1994). When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution.

### B.

#### *Intentional Use of False Information*

■ First, the appellants argue the magistrate was misled by information that

---

**3.** The appellants argue the magistrate violated the "four-corner" doctrine when she considered information outside the warrant and affidavit. We find this argument to be without merit. The trial transcript clearly shows the magistrate limited her consideration of facts to only those appearing in the affidavit. Specifically, as quoted above, she stated, in part: "I issued the warrant based on the wording in there [the warrant] that said the informant had been in the residence and did know and was informed by the accused that there was marijuana. That indicated to me—that was reason that I felt the informant was reliable." Our review on appeal, likewise, is limited to the facts contained in the warrant and affidavit.

**4.** Of course, the crucial decision in this case was the magistrate's finding of probable cause. Our review of a magistrate's probable cause determination is deferential. Simply stated, our task is to determine whether the magistrate had a substantial basis for the decision. We accord a magistrate's decision great deference and will not invalidate a warrant by interpreting an affidavit in a hypertechnical, rather than a commonsense, manner.

**5.** In *State v. Farley*, this Court made it plain that the "clearly erroneous" rule does not protect findings made on the basis of the application of incorrect legal standards or made in disregard of applicable legal standards. 192 W.Va. at 253, 452 S.E.2d at 56.

the affiant officer knew was false or would have known was false if not for a reckless disregard of the truth. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *State v. Walls,* 170 W.Va. 419, 294 S.E.2d 272 (1982).[6] To successfully challenge the validity of a search warrant on the basis of false information in the warrant affidavit, the defendant must establish by a preponderance of the evidence that the affiant, either knowingly and intentionally or with reckless disregard for the truth, included a false statement therein. *Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676–77, 57 L.Ed.2d at 672; *State v. Wood,* 177 W.Va. 352, 354, 352 S.E.2d 103, 105 (1986). The same analysis applies to omissions of fact. The defendant must show that the facts were intentionally omitted or were omitted in reckless disregard of whether their omission made the affidavit misleading.[7] Recklessness may be inferred from an omission in an affidavit only when the material omitted would have been "clearly" critical to the finding of probable cause. *United States v. Ozar,* 50 F.3d 1440, 1445 (8th Cir.1995).

The reviewing court then must determine whether, either absent the false material or supplemented with the omitted material, the remaining content of the affidavit is sufficient to establish probable cause. *See Franks,* 438 U.S. at 156, 98 S.Ct. at 2676–77, 57 L.Ed.2d at 672; *State v. George,* 185 W.Va. 539, 547, 408 S.E.2d 291, 299 (1991). If the remaining content is insufficient to establish probable cause, the warrant must be voided and the evidence or statements gathered pursuant to it excluded. *State v. Thompson,* 178 W.Va. 254, 256, 358 S.E.2d 815, 817 (1987). Mere negligence or innocent mistake is insufficient to void a warrant. *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682.

Under *Franks/Walls,* a statement in a warrant is not false, however, merely because it summarizes facts in a particular way; if a statement can be read as true, it is not a misrepresentation. In *Wood,* this Court emphasized the degree of deference to be given to the findings of a circuit court where there is conflict. Such deference also is appropriate where two interpretations reasonably may be drawn from the facts and one of the interpretations supports the circuit court's determination. Clearly, *Wood* establishes the proposition that findings of a circuit court concerning whether an affidavit contains deliberately falsified information are not subject to reversal unless they are clearly wrong. 177 W.Va. at 354–55, 352 S.E.2d at 105–06 (1986); *see also United States v. Fawole,* 785 F.2d 1141 (4th Cir.1986). Again, a search warrant affidavit is not invalid even if it contains a misrepresentation, if, after striking the misrepresentation, there remains sufficient content to support a finding of probable cause. Probable cause is evaluated in the totality of the circumstances.

Specifically, the appellants argue the affiant officer, Corporal Livingston, permitted the inclusion of inconsistent statements and false impressions in the affidavit and concealed or overstated other information with regard to the informant's reliability and veracity; however, this statement was based on Corporal Whisman's comment that he previously used the informant. As we have previously reasoned, in considering the findings of a circuit court under the *Franks/Walls* standard of review, we only look to determine whether the record as a whole supports the findings. In this case, we only need to determine whether there is evidence that supports the statement that the informant was credible and reliable and whether the affiant discussed the informant with Cor-

6. *See also United States v. Jones,* 913 F.2d 174, 176 (4th Cir.1990), *cert. denied,* 498 U.S. 1052, 111 S.Ct. 766, 112 L.Ed.2d 785 (1991); *State v. George,* 185 W.Va. 539, 408 S.E.2d 291 (1991); *State v. Thompson,* 178 W.Va. 254, 358 S.E.2d 815 (1987); *State v. Wood,* 177 W.Va. 352, 352 S.E.2d 103 (1986).

7. In *United States v. Hawkins,* 788 F.2d 200 (4th Cir.1986), *cert. denied,* 479 U.S. 850, 107 S.Ct.

176, 93 L.Ed.2d 112 (1986), the court was asked to decide the issue of whether *Franks* is violated when important polygraph information is not disclosed to a magistrate when a warrant is sought. The court answered no. "Failure to advise the magistrate of the results of Robinson's polygraph examination is not the deliberate falsity or reckless disregard for the truth mentioned in *Franks.*" 788 F.2d at 208.

poral Whisman. Upon review of the facts, we hold there was sufficient evidence to support the circuit court's determinations.[8] Despite the nature of the informant's knowledge, there is no evidence that the affiant officer doubted the informant's credibility, and *Franks/Walls* requires only that an officer reasonably believe the allegations to be true. *See United States v. Chavez,* 902 F.2d 259, 265 (4th Cir.1990), *citing Franks,* 438 U.S. at 165, 98 S.Ct. at 2681, 57 L.Ed.2d at 678. Therefore, after a thorough review of the evidence presented at the suppression hearing, we conclude the circuit court was not *clearly* erroneous in crediting the testimony of the affiant officer and in rejecting the appellants' argument.[9]

### C.

### *Lack of Probable Cause to Support Issuance of Warrant*

The appellants launch a two-pronged attack on the probable cause finding in this case. First, they argue the magistrate could not have made an informed decision because the allegations in the affidavit concerning the informant's veracity were "bare bones and conclusory[.]" Second, at oral argument, the appellants contended the affiant officer provided the magistrate with no independent information or proof that there was any independent corroboration of the highly unilluminating statements of the informant.

■■■ Probable cause for the issuance of a search warrant exists if the facts and circumstances provided to a magistrate in a written affidavit are sufficient to warrant the

belief of a prudent person of reasonable caution that a crime has been committed and that the specific fruits, instrumentalities, or contraband from that crime presently may be found at a specific location.[10] It is not enough that a magistrate believes a crime has been committed. The magistrate also must have a reasonable belief that the place or person to be searched will yield certain specific classes of items. There must be a nexus between the criminal activity and the place or person searched and thing seized. 1 Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* I–358 (1994). The probable cause determination does not depend solely upon individual facts; rather, it depends on the cumulative effect of the facts in the totality of circumstances.

■■■ Here, the issue of probable cause is impacted by the use of a confidential informant. A key issue in determining whether information provided by an informant is sufficient to establish probable cause is whether the information is reliable. An informant may establish the reliability of his information by establishing a track record of providing accurate information. *Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527, 545 (1983). However, where a previously unknown informant provides information, the informant's lack of a track record requires some independent verification to establish the reliability of the information. *See State v. Hlavacek,* 185 W.Va. 371, 407 S.E.2d 375 (1991); *State v. Adkins,* 176 W.Va. 613, 346 S.E.2d 762 (1986); *State v. Schofield,* 175 W.Va. 99, 331 S.E.2d 829 (1985). Independent verification occurs

---

8. At the suppression hearing, Corporal Livingston stated that Corporal Whisman told him the informant previously had been reliable. In addition, Corporal Whisman testified at the hearing that the informant had provided him reliable and truthful information in the past.

9. Even if the record, read generously in favor of the appellants, might conceivably support some more favorable scenario—and we do not suggest that it can—we would not meddle. Our review is only for clear error; where there is more than one plausible view of the circumstances, a circuit court's choice among the alternatives cannot be clearly erroneous.

10. Probable cause has been defined as reasonable grounds for belief, supported by less than

prima facie proof but more than mere suspicion. The task of a magistrate in issuing a warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). In other words, facts which would lead a reasonably cautious person to believe the search will uncover evidence of a crime will support a finding of probable cause.

when the information (or aspects of it) is corroborated by independent observations of the police officers. *Gates,* 462 U.S. at 241–45, 103 S.Ct. at 2333–36, 76 L.Ed.2d at 550–53; *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 332 (1959). Thus, we must decide whether the informant had a sufficient track record of providing accurate information and, if not, whether any aspect of the informant's information was corroborated.

We begin by observing that Corporal Livingston's affidavit did not disclose why the informant could be considered "reliable." It failed to disclose whether any information previously provided by the informant related to an investigation of his own narcotic or drug-related activities or similar activities by other persons; whether his information was important or incidental in other criminal investigations; or whether the information of the informant ever resulted in any search warrants, arrest warrants, or convictions. Here, there is not even an averment that the informant provided reliable information in the past—which obviously is preferable to the mere statement in the affidavit that the person supplying the information "is reliable." The malady of this general averment is that it still "leaves the nature of that [past] performance undisclosed, so that the judicial officer making the probable cause determination has no basis for judging whether the [affiant's] characterization of [the informant as reliable] is justified"—the magistrate remains relegated, albeit in a more attenuated sense, to relying on an affiant's reliability judgment. 1 Wayne R. LaFave, *Search and Seizure* § 3.3(b) at 636 (2nd ed. 1987).

Therefore, the allegation of reliability in Corporal Livingston's affidavit should have been "entitled to only slight weight." *United States v. Miller,* 753 F.2d 1475, 1480 (9th Cir.1985).

Discounting the affidavit's allegation of the informant's reliability, however, does not end our inquiry. "[E]ven if we entertain some doubt as to the informant's motives, [an informant's] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." *Gates,* 462 U.S. at 234, 103 S.Ct. at 2330, 76 L.Ed.2d at 545. Furthermore, under the totality of the circumstances announced in *Gates,* "veracity" and "basis of knowledge" are no longer viewed as independent prerequisites to a finding of probable cause: "[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability" such as corroborating evidence gathered by law enforcement. *Gates,* 462 U.S. at 233, 103 S.Ct. at 2329, 76 L.Ed.2d at 545.[11] In the instant case, the affidavit states the "informant had seen the plants within the last 5 days and accused told informant that the plants were marijuana." Considering the discretionary nature of the magistrate's determination, we find the informant's statement, although general and generally vague, was based on firsthand observations and demonstrated an adequate "basis in knowledge."[12] As a result, the central question becomes whether there was sufficient

---

11. In *State v. Thompson,* we discussed and accepted the Supreme Court's adoption of the "totality of circumstances" test to establish reliability and knowledge in meeting the requirement of probable cause. Specifically, we stated:

> In *Gates* the [C]ourt reasoned that different elements of probable cause should not be understood as separate, independent, mechanical requirements that have a technical, talismanic quality. Rather, the [C]ourt held, all aspects of a warrant application should be viewed as part of a bundle of tightly intertwined issues that may usefully illuminate the common sense, practical question of whether there is "probable cause."

*Thompson,* 178 W.Va. at 257, 358 S.E.2d at 818 (citations omitted).

12. Personal knowledge is an adequate substitute for detailed facts if the informant is otherwise credible. In *Walls, supra,* we stated:

> The fact that the affidavit did not detail the facts supporting the reliability of the informant does not render it invalid. We addressed this problem in *State v. White,* 167 W.Va. 374, 280 S.E.2d 114 (1981), where we said in Syllabus Point 1:
>
> " 'A valid search warrant may issue upon an averment that an unnamed informant was an eyewitness to criminal activities conducted on premises described in the warrant.' "
>
> 170 W.Va. at 424, 294 S.E.2d at 277.

corroboration of the informant's veracity to support an overall finding of probable cause. *See Thompson,* 178 W.Va. at 257, 358 S.E.2d at 818 (even under *Gates,* information establishing probable cause must "attest[ ] to the 'veracity' and basis of knowledge of the person supplying the information"). *See also State v. Hlavacek,* 185 W.Va. 371, 378, 407 S.E.2d 375, 382 (1991) ("when information received from a confidential informant is relied upon in an affidavit for a search warrant, the affidavit must contain information which establishes the informant's basis of knowledge and lends credibility to the informant's statements").

■ The appellants' second argument goes precisely to this issue of corroboration. Their argument is both appealing and persuasive. There are several different ways for the police to corroborate an informant's "veracity." One way is to independently confirm what the informant said is true.[13] Another way is to create circumstances under which the informant is unlikely to lie. Here, the magistrate was not provided with any information as to why and how the informant made his observations. For example, such information may include whether the informant made his observations in the context of a controlled surveillance operation and reported intermittently to a supervising police officer who was able to corroborate the informant's access to the appellants.[14] Relevant information also may include whether a questionably reliable report given by an infor-

mant consists of facts readily verifiable so, if the warrant is issued, lies likely would be discovered quickly and favors falsely curried would dissipate rapidly. *Accord* 1 LaFave, *supra,* § 3.3(f) at 686–87. Finally, the corroboration requirement could be met by information contained in police files about the appellants. *See United States v. Scalia,* 993 F.2d 984, 988 (1st Cir.1993) (corroboration may derive from second-hand information in the police intelligence files).

■ Even considering the discretionary nature of a magistrate's determination and our limited task on appeal only to ensure that there is a "substantial basis" for the conclusion, under the totality of circumstances presented before the magistrate in this case, we are compelled to say the finding of probable cause was without such a "substantial basis." Indeed, no aspects of the informant's prediction were corroborated by independent observations of the police. Thus, the value of the information was diminished because of the complete lack of corroboration. As we stated in *Adkins,* "[t]here are no facts in the affidavit indicating that police investigation had tended to corroborate the informant's tip such as existed in the *Gates'* affidavit." *State v. Adkins,* 176 W.Va. 613, 624, 346 S.E.2d 762, 774 (1986). Moreover, the reliability of the information was not enhanced by the fact that the informant was able to describe some factual details that were not easily discovered.[15] *See Gates,* 462 U.S. at 245, 103 S.Ct. at

---

**13.** The fact that an informant provided correct information in certain aspects of his prediction (even innocent behavior) increases the probability that other aspects of his prediction (the criminal behavior) also are correct. *Gates,* 462 U.S. at 244–45, 103 S.Ct. at 2335–36, 76 L.Ed.2d at 552.

**14.** Although mere companionship with an individual suspected of criminal activity does not satisfy the probable cause standard, such association is "part of the 'practical considerations of everyday life' which can be considered in determining whether there is probable cause." *United States v. Wright,* 577 F.2d 378, 380 (6th Cir. 1978), *quoting United States v. Harris,* 403 U.S. 573, 582–83, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723, 733 (1971).

**15.** In reaching our conclusion, we give special consideration to the fact that the information

provided to the magistrate was not highly detailed. The richness of detail provided by an informant increases the reliability of the information. As the Supreme Court stated in *Gates:*

[T]he anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.... If the informant had access to accurate information of this type ... it was not unlikely that he also had access to reliable information of the ... alleged illegal activities.

462 U.S. at 245, 103 S.Ct. at 2335, 76 L.Ed.2d at 552–53 (footnote omitted). Thus, the amount of detail provided by the informant may alone be enough to make the information trustworthy. On the other hand, general information when coupled with anonymity severely undercuts the reliability of the information.

2335, 76 L.Ed.2d at 552–53. To the contrary, the information in the affidavit was "bare bones" at best and standing alone hardly could support a finding of probable cause under either *Gates* or *Adkins*.

▮▮▮▮ Accordingly, we hold that the issuance of the search warrant was not supported by probable cause and, therefore, violated the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution.[16]

## III.

### CONCLUSION

For the foregoing reasons, we find the Circuit Court of Greenbrier County erred by denying the appellants' motion to suppress. Therefore, we reverse the order of the circuit court denying the motion and remand this case for further proceedings.

Reversed and remanded.

BROTHERTON and RECHT, JJ., did not participate.

MILLER, Retired J. and FOX, Judge, sitting by temporary assignment.

CLECKLEY, J., concurs and reserves the right to file a concurring opinion.

---

**16.** We refuse to address the prosecution's alternative reliance on the "good faith" exception to the warrant requirement announced in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). First, we have found that no probable cause existed and the affidavit was merely "bare bones and conclusory[.]" The "good faith" exception does not apply to circumstances where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *See State v. Hlavacek*, 185 W.Va. 371, 407 S.E.2d 375 (1991); *State v. Adkins*, 176 W.Va. 613, 346 S.E.2d 762 (1986); *State v. Schofield*, 175 W.Va. 99, 331 S.E.2d 829 (1985). Second, appellate courts frequently refuse to address issues that appellants, or in this case the appellee, fail to develop in their brief. In fact, the issue of "good faith" was adverted to in a perfunctory manner unaccompanied by some effort at developed argumentation. Indeed, "[i]t is … well settled, … that casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal." *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3rd Cir.1993).

**1.** For the text of Rule 11(a)(2), see *infra*.

---

CLECKLEY, Justice, concurring:

I agree entirely with another of Judge Fox's fine and scholarly opinions. I write only to applaud the trial court, the litigants, the prosecuting attorney, and defense counsel below for their use of Rule 11(a)(2) of the West Virginia Rules of Criminal Procedure.[1] Realizing that the only meritorious issue in the case was the Fourth Amendment claim, the participants below agreed to allow the defendants to enter conditional guilty pleas[2] which preserved the defendants' right to appeal the constitutional claim. By invoking Rule 11(a)(2), the parties not only eliminated the need for a protracted trial, but paid the ultimate respect to limited judicial resources and judicial economy. To be specific, the appropriate use of a conditional guilty plea by a criminal defendant serves the interests of justice by, *inter alia*, safeguarding the defendant's right to appeal and promoting judicial economy. *See State v. Forshey*, 182 W.Va. 87, 93, 386 S.E.2d 15, 21 (1989) (forcing party to go through an unnecessary trial is a " 'pointless and wasteful exercise' ") (Miller, J., dissenting). (Citation omitted).

As a general rule, an *unconditional* plea of guilty or *nolo contendere*, intelligently and

---

**2.** Conditional pleas are frequently confused with "*Alford*" pleas, named after the decision in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); but, as the court in note 1 of *State v. Hodge*, 118 N.M. 410, 412, 882 P.2d 1, 3 (1994), noted, the purpose and effect of the two are different:

> "In *Alford*, the United States Supreme Court held that courts do not violate due process when they accept guilty pleas from defendants who continue to protest their innocence … so long as the court is satisfied that there is a factual basis for the plea independent of the defendant's statements…. An *Alford* plea, however, does not in itself reserve any issue for appeal.
> "A conditional guilty plea, on the other hand, conditions the plea on reservation of one or more specific issues for appellate review. An *Alford* plea could be conditioned on review of a specific issue, as it was in the case involved here …; but it is a conditional guilty plea only if it comports with the requirements for such a plea. Otherwise, appellate review of *Alford* pleas is conducted under the same standards as are applicable to review of unconditional guilty pleas." (Citations omitted).

voluntarily made, operates as a waiver of all nonjurisdictional defects and bars the later assertion of constitutional challenges to pretrial proceedings. *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Losh v. McKenzie,* 166 W.Va. 762, 277 S.E.2d 606 (1981); *State v. Sims,* 162 W.Va. 212, 248 S.E.2d 834 (1978); 1 C. Wright, *Federal Practice & Procedure* § 175 (1982). Although a defendant may still challenge the sufficiency of the indictment or other defects bearing directly upon the State's authority to compel the defendant to answer to charges in court, claims of nonjurisdictional defects in the proceedings, such as unlawfully obtained evidence and illegal detention, generally will not survive the plea. An exception to this general rule is a plea conditioned upon the right to appeal certain pretrial rulings. "Where specific rulings are decisive of the case, so that a trial serves merely to preserve those pretrial issues for appeal, the conditional plea obviates the need for a trial thus conserving judicial resources." *State v. Morin,* 71 Haw. 159, 162, 785 P.2d 1316, 1319 (1990).

In West Virginia, conditional pleas are authorized by Rule 11(a)(2) of the Rules of Criminal Procedure:

> "Conditional Pleas. With the approval of the court and the consent of the state, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea."

Prior to our adoption of Rule 11(a)(2), and to a disappointingly large extent today, a criminal defendant who loses one or more pretrial motions will often go through a lengthy trial merely to preserve the pretrial issues for later appellate review. In most cases, this results in a waste of prosecutorial and judicial resources, not to mention adding to the already congested trial dockets of circuit courts. Rule 11(a)(2) was adopted solely to avoid this unfortunate and unnecessary consequence. *See also Lefkowitz v. Newsome,* 420 U.S. 283, 293, 95 S.Ct. 886, 891, 43 L.Ed.2d 196, 204 (1975) (describing use of conditional guilty plea in New York as "commendable efforts to relieve the problem of congested criminal trial calendars in a manner that does not diminish the opportunity for the assertion of rights guaranteed by the Constitution").[3]

Although a conditional guilty plea can only be used in limited circumstances,[4] as done in the case *sub judice,* it spares the taxpayers and the court the expense of a potentially time consuming trial. Rule 11(a)(2) not only preserves resources, but serves the ends of justice by permitting a defendant to preserve specific errors. In my judgment, Rule 11(a)(2) is one of our most important criminal rules and, when it is properly invoked, everyone benefits, including the public.

The procedure for following Rule 11(a)(2) should remain simple. A defendant pre-

---

**3.** Obviously, there are still some remaining objections to the procedure for conditional guilty pleas. Four of the most often heard objections are: (1) the procedure encourages appellate litigation; (2) it does not advance the interests of finality in the disposition of criminal cases; (3) it precludes the effectiveness of meaningful appellate review because of the absence of a full trial record; and (4) it compels decisions on many issues that would ordinarily not be addressed by an appellate court. Most of these problems are not applicable in West Virginia because there is no automatic right to appeal. More importantly, when these considerations are balanced against the obvious gains in judicial efficiency that are realized when a full trial is avoided, as well as the opportunity afforded to defendants to enter a plea without foregoing substantial constitutional claims, the need for Rule 11(a)(2) appears compelling. In cases where a defendant chooses to go to trial in order to preserve his right of appeal, not only is finality not achieved, but a successful appeal may result in two trials and two appeals.

**4.** *See United States v. Doherty,* 17 F.3d 1056, 1058 (7th Cir.1994) (*quoting United States v. Yasak,* 884 F.2d 996, 999 (7th Cir.1989), noting that conditional pleas are " 'allowed only when the appellate court's decision will completely dispose of the case' "); *United States v. Markling,* 7 F.3d 1309, 1313 (7th Cir.1993), (*quoting United States v. Wong Ching Hing,* 867 F.2d 754, 758 (2nd Cir.1989), *quoting* Advisory Committee Note to 1983 Amendment of Fed.R.Crim.P. 11 for the proposition that the issue reserved on a conditional guilty plea must " ' "dispose of the case either by allowing the plea to stand or by such action as compelling dismissal of the indictment or suppressing essential evidence" ' ").

serves the alleged error by invoking a ruling by the trial court on a pretrial motion to suppress evidence or to dismiss. The defendant may then plead guilty or *nolo contendere* and reserve appellate review of an adverse determination of a pretrial motion by entering a conditional plea, in writing, specifying the issue or issues reserved for appeal. Entry of the conditional plea is contingent upon approval of the trial court and the consent of the prosecution. Significantly, neither the prosecution nor the circuit court is required to agree to a conditional guilty plea and both are "free to reject a conditional plea for any reason or no reason at all." *United States v. Bell,* 966 F.2d 914, 916 (5th Cir.1992). As discussed in note 4, *supra,* before accepting a conditional plea, the circuit court and the prosecution should assure that pretrial issues reserved for appeal are case dispositive and are capable of being reviewed by this Court without a full trial.

It is important for the defendant to understand that Rule 11(a)(2) does not guarantee that his or her petition for appeal will be granted by this Court. If this Court does not grant the petition for appeal, the conviction becomes final and the guilty plea may not later be withdrawn for this reason. If the case is accepted for appellate review, our initial task is to determine whether a defendant entered a valid conditional plea. In deciding this initial issue, we, as an appellate court, should not always require *rigid* adherence to all the requirements of Rule 11(a)(2). *See* W.Va.R.Crim.P. 11(h) ("[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded"). On appeal, we can pardon the informalities of a conditional guilty plea "so long as the record demonstrates that the spirit of Rule 11(a)(2) has been fulfilled—that the defendant expressed an intention to preserve a particular pretrial issue for appeal and that neither the government nor the district court opposed such a plea." *Bell,* 966 F.2d at 916. *See also United States v. Fernandez,* 887 F.2d 564, 566 n. 1 (5th Cir.1989) (holding conditional guilty plea valid despite lack of written reservation of right to appeal and judge's approval of conditional plea).

On the other hand, "[t]he conditional plea is susceptible to abuse ... unless its use is carefully limited to significant issues the determination of which on appeal is likely to be dispositive of the case." *State v. Madera,* 198 Conn. 92, 101, 503 A.2d 136, 141 (1985). Therefore, as an appellate court, we will review with caution the entire record to determine whether the litigants or the court below offered satisfactory justification as to why the procedure under Rule 11(a)(2) was deemed appropriate. In *Madera,* 198 Conn. at 101–02, 503 A.2d at 141, the court further stated:

> "The inherent power of the trial court to reject such a plea where it is clearly inappropriate affords some protection against misuse of the statutory procedure, but the court is not in a position to evaluate such prosecutorial concerns as the significance of a particular ruling to the ultimate disposition of a case or the problems entailed by delaying a trial for the period necessary to obtain appellate relief. The prosecutor is ordinarily much more familiar with the evidence to be presented that may not be affected by the ruling and also with the effect of delay incident to an appeal upon the availability of witnesses. Even where the prosecutor looks favorably on the conditional plea ... the parties, as well as the trial court, must be sure that the issues reserved can properly be reviewed on the record available."

In the case *sub judice,* the record made by the trial court was exemplary and this Court did not hesitate to approve the conditional plea procedure. I conclude by again applauding the participants below and particularly the trial court for making this system of criminal justice work as it should.