# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

May 17, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 12-0346** (Wood County 08-F-190)

**James Paul Bryan,**
**Defendant Below, Petitioner**


## MEMORANDUM DECISION

Petitioner James Paul Bryan, by counsel Courtney L. Ahlborn, appeals his conviction for second degree robbery. The State of West Virginia, by counsel the Office of the Attorney General, filed its response to which petitioner replied. Petitioner requests that the jury verdict be reversed and that he be released from incarceration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 13, 2007, petitioner allegedly entered the Dollar General Store in Parkersburg, West Virginia, picked up a few items, and proceeded to the cash register at closing time. One employee began to lock the front door while another employee, Yvonne Bauldridge, began ringing up petitioner's items. The State contends that petitioner reached into his pocket, acted as though he had a weapon, and told Ms. Bauldridge that he was robbing the store. Ms. Bauldridge gave petitioner money from the cash drawer, and petitioner demanded that the other employee unlock the door so that he could exit. The husband of the employee who locked and unlocked the door was waiting in the parking lot in his car during the robbery. That employee yelled to her husband, "That guy just robbed us!" The husband went after petitioner and jumped into petitioner's car. The car hit the side of the building, and he fled the scene. During the investigation, the police prepared a six man photographic lineup to show the witnesses. Ms. Bauldridge was unable to make an identification from the lineup, but both the other employee and that employee's husband identified petitioner.

Petitioner was indicted in 2008 for one count of robbery in the second degree. Joseph P. Albright Jr. was appointed to represent petitioner, and Mr. Albright represented him during the trial in March of 2010. That trial resulted in a mistrial due to a hung jury. New counsel was appointed, and a second trial was held on April 27 and 28, 2011. At the conclusion of that trial, petitioner was convicted of robbery in the second degree. Petitioner was sentenced to not less

1

than five nor more than eighteen years of incarceration with a credit of three hundred and thirty two days.

On appeal, petitioner asserts three assignments of error. Petitioner first argues that the indictment violated petitioner's rights, and claims that the trial court erred by denying his motion for judgment of acquittal. The indictment states that petitioner committed the offense of robbery in the second degree "by unlawfully, intentionally, and feloniously taking and carrying away United States Currency, of some value, from the person or presence of Yvonne Bauldridge by placing Yvonne Bauldridge in fear of bodily injury with intent to steal said money and with the intent to permanently deprive the owner of said money, against the peace and dignity of the State." At the close of the State's case-in-chief, petitioner moved for judgment of acquittal pursuant to Rule 29 of the West Virginia Rules of Criminal Procedure. Petitioner argued that under the language of the indictment, the State had to prove that Yvonne Bauldridge was the owner of the money but failed to do so. The evidence presented at trial showed that the Dollar General Corporation was the owner of the money taken. Due to the circuit court's denial of the motion for judgment of acquittal, petitioner contends he is at risk of double jeopardy.

The State responds by asserting that the issue framed by petitioner on appeal is different from the issue presented below. The State argues that at the close of the State's case-in-chief, petitioner attacked the sufficiency of the evidence to prove the allegations in the indictment. Petitioner's motion was based on the ground that the proof did not match the allegations contained in the indictment. At that time, petitioner claimed that while the indictment alleged that he did take currency from Ms. Bauldridge, the proof failed to establish that the currency belonged to Ms. Bauldridge, as it belonged to Dollar General. The State asserts that petitioner's argument is misleading, as the indictment alleged that the money was taken from the person or presence of Ms. Bauldridge, rather than being owned by Ms. Bauldridge. The State further argues that the circuit court, the State, petitioner, and the jury all knew what the charge was: petitioner held up a store by forcing a clerk to hand over the cash.

"Generally, the sufficiency of an indictment is reviewed *de novo*." Syl. Pt. 2, in part, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996). "An indictment is sufficient under Article III, §14 of the West Virginia Constitution and W.Va. R.Crim.P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy." Syl. Pt. 6, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999). "The sufficiency of a criminal indictment is measured in practical, commonsense terms by whether it meets these basic constitutional requirements. 'No particular form of words is required . . . so long as the accused is adequately informed of the nature of the charge and the elements of the offense are alleged.' *State v. Hall*, 172 W.Va. 138, 143-44, 304 S.E.2d 43, 48 (1983); *see also* [*State v.*] *Manns*, 174 W.Va. [793] at 799, 329 S.E.2d [865] at 872 (1985)." *Wallace* at 161, 26. The indictment in this case is sufficiently clear to inform petitioner of the crime with which he was charged and later convicted. We find the circuit court did not err in denying petitioner's motion for judgment of acquittal.

Petitioner's second assignment of error is the claim that his rights were violated by the State's alleged failure to preserve and timely produce evidence. Based upon that claim, petitioner

asserts that the circuit court erred in denying petitioner's motion to dismiss. In support of this argument, petitioner asserts that the State failed to preserve the original case file, including the original photo lineup and any notes taken by the officers during the photo lineup identifications. Petitioner claims that throughout the trial, questions arose regarding the procedure used to allow witnesses to make an out-of-court identification using the photo lineup. Petitioner also asserts that he was prejudiced in his preparation for trial because he was not made aware the original file had been lost or an original color photo lineup existed until the retired investigating officer testified during trial. The failure to disclose this evidence is alleged by petitioner to be a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

The State argues that petitioner's assignment of error is essentially a spoliation of evidence issue. The State concedes that during the four year interval between indictment and trial that the police lost the file containing the original photo array shown to witnesses and the notes and/or forms related to those photo lineups. The State, however, contends that petitioner cannot meet the test set forth in Syllabus Point 2, *State v. Osakalumi*, 194 W.Va. 758, 461 S.E.2d 504 (1995). This assertion is based on the fact that there is nothing in the record that infers bad faith on the part of the State, and there is no suggestion of gross negligence. The State asserts that the photo lineup is of little importance because all three eyewitnesses identified petitioner at trial. Petitioner also had the opportunity to cross-examine the witnesses about the missing originals and to argue his missing evidence theory to the jury. Thus, the State argues that petitioner failed to demonstrate how he was prejudiced by the loss of the original photo array.

"This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*." Syl. Pt. 2, in part, *State v. Elswick*, 225 W.Va. 285, 693 S.E.2d 38 (2010). "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Osakalumi*, 194 W.Va. at 764, 461 S.E.2d at 510. As previously set forth by this Court:

> When the State had or should have had evidence requested by a criminal defendant but the evidence no longer exists when the defendant seeks its production, a trial court must determine (1) whether the requested material, if in the possession of the State at the time of the defendant's request for it, would have been subject to disclosure under either West Virginia Rule of Criminal Procedure 16 or case law; (2) whether the State had a duty to preserve the material; and (3) if the State had a duty to preserve the material, whether the duty was breached and what consequences should flow from the breach. In determining what consequences should flow from the State's breach of its duty to preserve evidence, a trial court should consider (1) the degree of negligence or bad faith involved; (2) the important of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at the trial to sustain the conviction.

Syl. Pt. 2, *Id.*

3

In this case, petitioner had available to him, both prior to and during the trial, a black and white copy of the photo lineup. All of the eyewitnesses who had examined the photo lineup were available to testify at trial, as were the police officers who were present for the photo lineups. The eyewitnesses also identified petitioner in the courtroom during trial. There is nothing in the record that suggests the State engaged in any bad faith conduct related to the photo lineup, as it appears the original lineup was simply misplaced during the four year period. We, therefore, find that the degree of negligence in failing to produce the original photo lineup was small, the missing photo lineup was not of great importance, and the other evidence produced at trial was sufficient to sustain the conviction. Based on these findings, the circuit court did not err in denying petitioner's motion to dismiss relative to the photo lineup.

Petitioner's final assignment of error on appeal is the circuit court's denial of petitioner's request that the identification testimony of the eyewitnesses be suppressed based on the procedures used during the out-of-court witness identifications. Petitioner contends that the identification procedures used by police were highly suggestive. He claims that officers basically told the witnesses that the suspect was in the lineup, and the officers' testimony regarding the lineup was inconsistent. Petitioner is critical of the fact that one eyewitness signed a form relating to the photo after she identified the photo, while another witness signed his own, handwritten form. The State argues that petitioner's argument was not supported by a scintilla of evidence. Everyone involved in the photo lineup process testified that the police in no way suggested whose photograph should be selected. The State asserts that nothing in the record gives rise to an inference that the photo lineup and/or the procedures utilized by the police were suggestive. The State also points to the fact that Ms. Bauldridge was unable to make an identification from the photo lineup because she believed that the photos in that lineup looked nearly identical.

> In *State v. Lilly*, 194 W.Va. 595, 461 S.E.2d 101 (1995), this Court explained the standard of review of a circuit court's ruling on a motion to suppress is a two-tier standard: "[W]e first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution." *Lilly*, 194 W.Va. at 600, 461 S.E.2d at 106 (internal citations and footnote omitted).

*State v. McGill*, No. 11-1386, 2013 WL 1113493 (W.Va. March 12, 2013), at *2. Petitioner argues that the out-of-court identification was so tainted that the State's witnesses should have been precluded from identifying him in front of a jury.

> In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the

totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Syl. Pt. 3, *State v. Casdorph*, 159 W.Va. 909, 230 S.E.2d 476 (1976), *vacated on other grounds as stated in State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982). In this instance, the two witnesses testified regarding the circumstances surrounding their out-of-court identification. One witness testified that she was unable to identify petitioner in the photo lineup. However, she was able to identify petitioner in court. In consideration of the totality of the circumstances, the identifications were reliable. We, therefore, find that when viewing the evidence in the light most favorable to the prosecution, the circuit court's denial of petitioner's request to suppress the identification testimony of the eyewitnesses was not clearly erroneous.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 17, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

5