# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0095** (Pocahontas County 18-F-46)

**James W. Wood Jr.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner James W. Wood Jr., by counsel Paul S. Detch, appeals the Circuit Court of Pocahontas County's January 9, 2020, sentencing order following his convictions for the misdemeanor offences of unlawful taking of a vehicle, destruction of property, and assault on a law enforcement officer, and the felony offenses of entry of a building other than a dwelling, grand larceny, and reckless fleeing from an officer. Respondent State of West Virginia, by counsel Mary Beth Niday, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On December 4, 2018, petitioner was indicted on one count of entry of a building other than a dwelling (felony), two counts of grand larceny (felony), one count of fleeing from a law enforcement officer (felony), one count of attempted malicious assault on a law enforcement officer (felony), one count of destruction of property (felony), one count of burglary (felony), and one count of destruction of property (misdemeanor).

These charges stemmed from an incident where petitioner was observed driving a utility terrain vehicle ("UTV") on the streets of Marlinton, West Virginia, at approximately 2:00 a.m. on September 19, 2018. Corporal Brian Shinaberry of the Pocahontas County Sheriff's Office initiated a traffic stop, but petitioner refused to stop, and a pursuit ensued. Corporal Shinaberry struck the UTV with his police cruiser several times before both vehicles came to a stop behind a school. Corporal Shinaberry fired several shots at petitioner, and petitioner again fled in the UTV. Ultimately, Corporal Shinaberry found petitioner parked at a nearby restaurant. Although Corporal Shinaberry denies firing additional shots at petitioner after finding him parked at the restaurant,

1

petitioner claims he did, and a shell casing was found between the officer's cruiser and the UTV. Petitioner sustained injuries to his leg and torso. After petitioner was taken into custody, it was determined that the UTV had been stolen and that items found in the UTV had been stolen from a local convenience store.

Petitioner's jury trial began on October 28, 2019.[1] During jury selection, petitioner's counsel asked the court (outside of the presence of the jury panel) whether there was "any objection to my beginning this case by saying, 'This is the case of the unreasonable seizure.'" The State objected, noting that petitioner had not moved to suppress or otherwise exclude any evidence. Petitioner's counsel countered that "the jury has a right to know what the issues are dealing with, whether it was—and whether they then have to take that particular evidence dealing with it." The court disagreed, finding that petitioner could not "seek to delegate to the jury issues concerning the admissibility of evidence. You can talk about how the jury should weigh the evidence, but the question of admissibility is one for the [c]ourt." At that point, petitioner's counsel moved "that all evidence that was taken as a result of an unreasonable seizure be excluded from consideration of the jury," namely "[e]verything that was a result of the arrest of [petitioner]."[2] Petitioner's counsel acknowledged that the officer "had probable cause to make what would be known as a *Terry* stop . . . and that they would have had the right to pursue [petitioner once he fled] in a reasonable manner and to eventually stop and arrest him."[3] But, counsel continued,

> when [the officer] decided that they were going to knock him off his vehicle, when they decided they're going to ram him with their cruiser at a high rate of speed on it, when they decided, without any warning to him, other than the flashing of lights, that they're just going to open up and shoot him 14 times, or shoot at him 14 times, hitting him five times, Your Honor, at the time that they consider the only thing that they knew of was that they were investigating a possibility of a misdemeanor, we could contend, Your Honor, that that particular seizure is unreasonable and that the [c]ourt . . . can rule on it. We also believe that the jury needs to have all the full information on it, so that it satisfies their mind that the Constitution and the public is being protected.

The State argued that petitioner's motion was untimely and that the predicate facts were known to petitioner. The court denied the motion, finding that

---

[1] Only the portions of the trial related to petitioner's assignment of error are recounted below.

[2] Petitioner's counsel listed the evidence to include

> the identification of [petitioner], in terms of—at the breaking and entering there—there at the family—General Store. There are security camera photographs showing an individual breaking in. But the only way that they are able to identify that is then connected to [petitioner] is because they then made this arrest of him, which we contend is totally unreasonable. Likewise, the evidence they have against him stealing a—. . . all-terrain, or side-by-side.

[3] *See Terry v. Ohio*, 392 U.S 1 (1968).

2

[t]he issue of admissibility of evidence is one for the [c]ourt to make. . . . And it's unfortunate that a—if you wished to exclude this evidence, that we could not have a proper motion before the [c]ourt in a timely manner so that I could have afforded you a full in-camera evidentiary hearing, if that was needed.

Petitioner's counsel continued, explaining that he did not earlier file a motion to suppress because

there was no way I could see that we were trying to keep that evidence out. It has to come in, in order to be able to show that my client did not maliciously assault this police officer, and so it was coming in. We had to have it come in.

The question as when the motion had to be made, my concern was I had not realized just how egregious that this particular matter had been until we actually got closer and closer to the trial.

Frankly, what my solution was, we were just simply going to ask you to hold that issue in abeyance until the close of the State's case, and then at that point, you could then rule . . . and we'll look at the instruction [instructing the jury that it could disregard the evidence if it found that the officer employed excessive force].

After the State rested, petitioner's counsel again broached the subject of the alleged unlawful seizure. Petitioner's counsel explained,

When I looked at it, and maybe I was in error when I looked at it, I said, "We had to have the evidence to come in to be able to deal with [m]alicious [a]ssault on the [p]olice [o]fficer," and that the police officer, we needed that evidence, and in many respects, there's no way to get around the fact of what happened on that was going to have to come before a jury.

. . . .

And so I am, at this time, somewhat perplexed. I want to preserve my right to say that, "Yes, the seizure on this particular matter was unreasonable," and for that reason, that we are entitled to get an instruction . . . to the jury later on, if need be, saying that this evidence that was obtained as a result of that seizure should not be considered by the jury in regards to determine the guilt or innocence of my client in regard to the charge particularly dealing with [b]reaking and [e]ntering.

. . . .

Had [the police] followed their protocol and had they followed the normal procedures that they had, my client would have escaped, which is not—it seems like kind of a silly defense, but the truth of the matter is, they would not have had the evidence to introduce against my client had they engaged in a reasonable seizure of him.

The court asked petitioner's counsel to pinpoint when the seizure took place. Counsel answered, "When they turned on their lights and began an unreasonable pursuit of him when they had, at best, only—," and the court interrupted petitioner's counsel to remind him that he "stated earlier that it was not unreasonable for the officer to turn on his lights and to effect a *Terry* [s]top." Petitioner's counsel responded,

> Then we could start saying—and I would agree at that point, he had every right to turn on his lights. He had every right to expect that the defendant would slow up and comply with his orders. When this officer decided that he was going to ram him, then that is a seizure, of which he is—has no authority to do so. . . .
>
> . . . .
>
> And I submit, Your Honor, arresting for what is a misdemeanor, which is all that they knew, and which once they conceded is basically just a misdemeanor and that they were using deadly force to stop my client, that that is an unreasonable seizure for which we should, at the very least, be given some type of instruction that the jury can disregard the evidence if they believe that that arrest is—[.]

The court found that

> if there was a constitutional violation of [petitioner's] rights relative to the manner in which law enforcement interacted with him on the—in the early morning hours of September 19th of 2018, that the remedy is not to instruct the jury to disregard competent evidence that has been presented in the course of this proceeding.
>
> I will not be instructing the jury that they may weigh whether the evidence is admissible. That has already been addressed by the [c]ourt.
>
> And the [c]ourt will not instruct the jury that they may disregard evidence that they find to be credible because they disagree with the manner in which that evidence was obtained. So your motion is denied.

Petitioner raised the issue of the alleged unlawful seizure a final time when discussing jury instructions. Petitioner's counsel stated, "We have submitted in our Jury Instruction Number Three the right that I should be able to argue that this particular seizure was unlawful and that the evidence obtained from it can at least be discarded." Counsel argued, in effect, that jurors, by weighing evidence, exclude or disregard evidence "all the time. . . . It is simply within their function to be able to say what they want to do in regards to evidence." Counsel acknowledged that "[t]hey can hear it," and he did not "dispute that they should hear it," but he argued that "they have a clear right to reject any evidence, whether they believe it as false evidence or whether they believe that it is evidence that has been unlawfully obtained."

The court refused to give the proposed instruction. The court found that petitioner "did not move to suppress this evidence prior to trial as required by [the] West Virginia Rules of Criminal

4

Procedure, specifically Rule [12(b)(3)]." The court also found that "[t]he issue of the admissibility of evidence must first be addressed to the [c]ourt," and "[t]he weighing of that evidence is a function for the jury." "Even if the defendant had moved to suppress," the court continued, "he has been unable to articulate, to the [c]ourt's satisfaction, when an unlawful seizure took place, and accordingly, what evidence would have been kept from law enforcement had there been no unreasonable seizure, as asserted by the defendant." The court further noted that petitioner failed to present any authority to support the proposed instruction and disagreed that instructing the jury to disregard properly admitted evidence was the appropriate remedy.

Following its deliberations, the jury found petitioner guilty of the misdemeanor offense of unlawful taking of a vehicle, a lesser-included offense of one grand larceny charge; the felony offense of entry of a building other than a dwelling; the misdemeanor offense of destruction of property; the felony offense of grand larceny; the felony offense of reckless fleeing from a law enforcement officer; and the misdemeanor offense of assault on a law enforcement officer, a lesser-included offense of the attempted malicious assault on a law enforcement officer charge.[4] The court sentenced petitioner to not less than one nor more than ten years of imprisonment for entry of a building other than a dwelling, six months in the regional jail for the misdemeanor offense of unlawful taking of a vehicle, not less than one nor more than ten years of imprisonment for grand larceny, not less than one nor more than five years of imprisonment for reckless fleeing from an officer, six months in the regional jail for the misdemeanor offense of assault on a law enforcement officer, and one year in the regional jail for the misdemeanor offense of destruction of property. These sentences were memorialized in the court's January 9, 2020, sentencing order, and it is from this order that petitioner appeals.

Petitioner raises one assignment of error on appeal, claiming that the circuit court erred in denying his motion to suppress because the officer had no probable cause or reasonable suspicion to stop him and because the officer used excessive force to seize him.

We employ a two-tiered standard of review to a circuit court's ruling on a motion to suppress: "[W]e first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action." *State v. Lilly*, 194 W. Va. 595, 600, 461 S.E.2d 101, 106 (1995).

Petitioner identifies some of the evidence adduced at trial that, he contends, establishes Corporal Shinaberry's excessive force and lack of probable cause or reasonable suspicion in initiating his stop of the UTV. Petitioner does not, however, challenge or address the circuit court's finding that his motion to suppress was untimely. Rule 12 of the West Virginia Rules of Criminal Procedure requires that "[m]otions to suppress evidence [must be raised prior to trial] unless the grounds are not known to the defendant prior to trial." *Id.* W. Va. R. Crim. P. 12(b)(3). And the "[f]ailure by a party to raise defenses or objections or to make requests which must be made prior to trial . . . may constitute waiver thereof, but the court for cause shown should grant relief from the waiver." *Id.* W. Va. R. Crim. P. 12(f). When the circuit court notified petitioner that his motion

---

[4] The felony destruction of property and burglary charges were dismissed prior to the jury's deliberations.

to suppress was untimely, he did not argue that the grounds for his late-raised motion were not known to him prior to trial nor did he argue that he should be granted relief from the waiver. To the contrary, petitioner acknowledged that he was aware of the grounds, but he could see "no way . . . that we were trying to keep that evidence out" as he deemed the evidence necessary "to show that my client did not maliciously assault this police officer." Because petitioner's motion to suppress was untimely and his challenge therefore waived, we find no error in the court's denial of his motion.[5]

Further, although petitioner now claims that the arresting officer did not have probable cause or reasonable suspicion to stop him, he conceded the opposite below. Having taken the opposite position below, the circuit court was not presented with the issue, and it is being raised here for the first time. "This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syl. Pt. 7, *State v. Garrett*, 195 W. Va. 630, 466 S.E.2d 481 (1995) (citations omitted). For this additional reason, petitioner's claim that the officer lacked probable cause is not properly before this Court.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** July 19, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[5] The finding of waiver is reinforced by petitioner's persistent assertions that the evidence "had to . . . come in," "we needed that evidence," and "[the jury] should hear it," along with his proposal that the jury be instructed to disregard the evidence if it found the evidence to be "false . . . or . . . unlawfully obtained." In other words, while petitioner may have technically, but untimely, moved to suppress the evidence, he was simultaneously arguing for its admission. Now that the jury has rendered its verdict and admission proved detrimental, petitioner cannot take the position that the evidence should have been suppressed. This is the sort of conduct—taking one position below and a different one on appeal—that the raise or waive rule is designed to prevent: "It prevents a party from making a tactical decision to refrain from objecting and, subsequently, should the case turn sour, assigning error (or even worse, planting an error and nurturing the seed as a guarantee against a bad result)." *State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996). Thus, far from demonstrating that he should have been afforded relief from his waiver, his arguments confirm that denial of his motion to suppress was warranted.